**WALDORF INVESTMENT COMPANY and Wendy's of Missouri, Inc., Plaintiffs–Appellants,**

v.

**Victor J. FARRIS, Jeanette Louise Farris, and Fabros, Inc., Defendants–Respondents.**

No. 20273.

Missouri Court of Appeals, Southern District, Division One.

Feb. 14, 1996.

Motion for Rehearing or Transfer Denied March 6, 1996.

Application to Transfer Denied April 23, 1996.

Donald W. Jones, Timothy E. Gammon, Springfield, for plaintiffs-appellants.

Tyce S. Smith, Sr., Smith and Dunbar, Waynesville, for defendants-respondents.

PER CURIAM.

This case was initiated by a three-count petition filed in 1985 by Waldorf Investment Company (Waldorf) and Wendy's of Missouri, Inc. (Wendy's) (sometimes collectively referred to as Plaintiffs) against Defendants in which they sought an injunction and damages. On this appeal, they contend that the trial court erred in denying an injunction, in excluding testimony given in the trial of the injunction count, and in dismissing the remaining two counts for failure to prosecute.

In 1981, Waldorf purchased property (the subject property) in St. Robert, Missouri from Defendants (collectively referred to as

the Farrises) and the estate of William J. Farris, deceased, for the purpose of constructing a "Wendy's Old Fashioned Hamburger" restaurant. That property is located on the south side of I–44, which runs in a generally east-west direction, and is apparently just east of an interchange and overpass over the highway.[1] The Farrises retained ownership of other property between the subject property and I–44.

A Wendy's restaurant was constructed on the subject property in early 1982. In March, 1985, Plaintiffs filed this suit alleging that Defendants[2] had begun construction of a building (a Western Sizzlin Steakhouse) in front of Plaintiffs' property which "significantly and substantially interferes with the Plaintiffs visibility from Interstate 44 of the Plaintiff's premises" in violation of paragraph 17 of the purchase contract. That paragraph read:

> 17. *Visibility:* Sellers agree that they will make every effort to prevent any obstruction being located in front of the property described in paragraph 1 of this Agreement that would in any way obstruct visibility from Interstate 44 to the said property.

Count I sought injunctive relief against continued construction of the steakhouse and to require that it be reconstructed "so that it does not interfere with the Plaintiffs right of visibility." Counts II and III sought actual and punitive damages respectively.

The issues under Count I were tried on April 4, 1985. On April 22, 1985, the trial court made findings of fact and conclusions of law and entered a judgment denying injunctive relief.[3] Plaintiffs filed a notice of appeal from that ruling, but for reasons not apparent from the record before us, the appeal was dismissed. We note, however, that Counts II and III were still pending and unresolved.

Later, the Farrises apparently filed a declaratory judgment action against "Wendy's

of Missouri, Inc., Sam F. Hamra, Jr. and Sam F. Hamra, Jr. d/b/a Waldorf Investment Company, Spike E. Ehrhardt and Steve Ehrhardt" to declare that construction on another portion of the Farrises' land would not violate the contract provisions.[4] On March 3, 1995, Plaintiffs in the instant case filed a motion to consolidate this case with the declaratory judgment action filed by the Farrises. Six days later, Defendants in the instant case filed a motion to dismiss Counts II and III of the original petition for failure to prosecute, which the court sustained on May 3, 1995.

Plaintiffs appeal the orders of April 22, 1985 denying them injunctive relief, and of May 3, 1995 dismissing Counts II and III of their original petition for failure to prosecute. We affirm.

In their first point relied on, Plaintiffs contend that the trial court erred in denying injunctive relief "and specifically by holding the contract provision regarding visibility was not violated by the steakhouse ... for the reason the clear meaning of the contract language was that Farris agreed not to block the view of Wendy's from I–44, and the steakhouse did at least partially obstruct visibility from I–44 to Wendy's."

The trial court, however, did not purport to hold that the steakhouse did not violate the visibility provisions of the Agreement. Rather, the court concluded that it was not necessary to determine whether the steakhouse was located in "front" of the property by defining what that term meant (either 180 degrees as argued by Plaintiffs or within parallel lines drawn from the east and west edges of the property to I–44 as argued by Defendants), because "under either definition plaintiff is not entitled to injunctive relief."

That conclusion was preceded by findings that from the first time both the steakhouse and Wendy's are visible to eastbound traffic

---

1. Exhibits referred to in the transcript, including photographs of the area, have not been filed in this court.

2. The Defendants include not only the Farrises but also Fabros, Inc., which, according to the record, is a corporation owned by the Farrises and their children.

3. The parties agreed that the case was being tried on the issue of whether a permanent injunction would be issued.

4. The record before us does not contain a copy of that petition or reflect the date it was filed.

on I–44, a car would then have to travel two miles in order to exit and return to Wendy's (this was apparently because visibility of Wendy's for eastbound traffic was blocked by the overpass until after traffic had passed the exit ramp and proceeded under the overpass); if the eastern and western boundaries of the tract were extended north to I–44, no part of the steakhouse would be within the extended lines; westbound traffic would be past Wendy's and looking backward before the steakhouse would interfere with the view of Wendy's; Plaintiffs' president had previously indicated approval of the construction as long as the steakhouse was built in accordance with plans reviewed by him; in an effort to provide as much visibility as possible, Defendants had lowered the floor of the steakhouse at a cost of $22,000, reduced the height of the roof from 8 to 4 feet, placed black roofing on it to reduce glare, and moved heating and cooling units inside the building resulting in a loss of floor space; and removing the roof of the steakhouse in its entirety as requested by Plaintiffs would cost over $140,000.

In the trial court's conclusions of law, it noted that the elements of an injunction are: (1) irreparable harm must be likely to result if the injunction is not granted; (2) there is no adequate remedy at law; and (3) the right to be protected is a substantial one and the injury is not a small or technical one. It also noted that a plaintiff has a heavy burden of proof when seeking an injunction; an injunction should be granted only if the right to relief is clear; and the court has a duty to consider the effect of an injunction on the parties.

The trial court, therefore, rather than denying an injunction based on a finding that the steakhouse did not violate the visibility requirement of the Agreement, held that Plaintiffs had not demonstrated an entitlement to injunctive relief under the above principles. Plaintiffs admitted as much in suggestions filed in the trial court in which they said that "all Defendants had to do to defeat the injunction claim was to show Plaintiffs had an adequate remedy at law (which evidently the court found they did have in Counts II and III of the Petition)."

The issue presented on appeal is that which is stated in the point relied on. *Pruellage v. De Seaton Corp.*, 380 S.W.2d 403, 405 (Mo.1964); *Woodfill v. Shelter Mut. Ins. Co.*, 878 S.W.2d 101, 102 (Mo.App.S.D. 1994). The basis of Plaintiffs' point relied on in this case is an issue which was not expressly decided by the trial court. An appellate court will not review such a proposition. *Crown Center Redevelopment Corp. v. Occidental Fire & Casualty Co.*, 716 S.W.2d 348, 357 (Mo.App.W.D.1986). Plaintiffs do not attack, on this appeal, any of the findings or conclusions of law actually made by the trial court in support of its judgment on Count I. Issues concerning other findings, by not being raised in a point relied on, are abandoned. *Dycus v. Dycus*, 806 S.W.2d 750, 752 (Mo.App.S.D.1991). Plaintiffs' first point is, therefore, denied.

In their second point on appeal, Plaintiffs contend that the trial court erred in striking testimony of Sam F. Hamra, Jr., the president of both Plaintiff corporations. The testimony in question was given at the hearing on the permanent injunction. On direct examination, the witness was asked about discussions he had with Mr. Farris concerning the property remaining between the subject property and I–44. The objection of Defendants' attorney that any such conversations would violate the parol evidence rule was overruled. Mr. Hamra answered that he had told Mr. Farris where he would like to locate the Wendy's restaurant, and that Mr. Farris said he owned the property in front of that location and would someday be developing it. Mr. Hamra continued:

> So part of the discussions prior to our signing that agreement centered around that I wanted to be assured from him that on any development that took place on that property that at no time or no construction would be of any building or any other thing that he might have in mind would ever be built there *that would anyway obstruct visibility of my Wendy's restaurant from Interstate 44.*

The trial court, *sua sponte*, announced that it was sustaining the objection as it related to the italicized part of the testimony "because it does, as best I can tell, vary, alter or

contradict the terms of paragraph 17. It's in evidence but I'll order it stricken and the Court will not consider it."

█ The parol evidence rule prohibits extrinsic evidence which would vary or contradict an unambiguous and complete contract. *CIT Group/Sales Fin., Inc. v. Lark,* 906 S.W.2d 865, 868 (Mo.App.E.D.1995); *Union Elec. Co. v. Fundways, Ltd.,* 886 S.W.2d 169, 170 (Mo.App.E.D.1994). The question of whether a contract is ambiguous is one of law for the court to decide. *Smith v. Lockwood,* 907 S.W.2d 306, 310 (Mo.App.W.D.1995); *CIT Group/Sales Fin., Inc. v. Lark,* 906 S.W.2d at 868. That question is also one of law on appeal, the standard for review of which is *de novo* with the appellate court independently considering the evidence and reaching its own conclusions. *Bickerton, Inc. v. American States Ins. Co.,* 898 S.W.2d 595, 601 (Mo.App.W.D.1995).

Plaintiffs' second point, however, is based on the premise that "assuming the contract language to be ambiguous or unclear, the trial court erred in striking [the testimony]...." Contrary to that assumption, the trial court made no finding that paragraph 17 of the Agreement was or was not ambiguous. The fact that the trial court struck part of the testimony on the theory that it altered or varied the written Agreement could be argued as some indication of its belief that the contract provision in question was not ambiguous.[5]

█ As indicated in the discussion of Point I, we will not review any proposition not expressly decided by the trial court. *Crown Center Redevelopment Corp. v. Occidental Fire & Casualty Co.,* 716 S.W.2d at 357. Plaintiffs have not raised, as an issue on this appeal, trial court error in not finding and declaring an ambiguity in paragraph 17 of the Agreement. Under these circumstances, the premise necessary for consideration of the point raised by Plaintiffs is not before us for review. Point II is, therefore, denied.

█ In their final point, Plaintiffs challenge the dismissal of Counts II and III of their petition pursuant to Defendants' motion to dismiss for failure to prosecute. Dismissal for failure to prosecute is a matter within the trial court's discretion which will be reversed only upon an abuse of discretion. *Belleville v. Director of Revenue,* 825 S.W.2d 623, 624 (Mo. banc 1992). An abuse of judicial discretion occurs when the trial court's ruling is against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Id.* at 624–25. If reasonable persons can differ about the propriety of the action taken, then it cannot be said that the trial court abused its discretion. *Shirrell v. Missouri Edison Co.,* 535 S.W.2d 446, 448 (Mo. banc 1976).

In the instant case, the three-count petition was filed on March 12, 1985; Defendants filed answers on April 2, 1985; the trial court entered a judgment on Count I on April 22, 1985; and Plaintiffs filed an appeal from that judgment on May 9, 1985 which was dismissed by this court on October 2, 1985. Based on the record before us, nothing occurred in this case from then until March 3, 1995 when Plaintiffs filed a motion to consolidate it with the declaratory judgment action filed by the Farrises individually and d/b/a Farris Brothers Investment Company. Defendants' motion to dismiss for failure to prosecute was filed on March 9, 1995 and sustained on May 3, 1995.

█ We recognize that the courts of this state have a dislike for dismissals for failure to prosecute and prefer dispositions on the merits. *State ex rel. Highway & Transp. Comm'n v. Moulder,* 726 S.W.2d 812, 813 (Mo.App.S.D.1987); *Horobec v. Mueller,* 628 S.W.2d 942, 944 (Mo.App.E.D.1982). However, there is a presumption that the trial court's decision is correct, and the appellant has the burden of demonstrating an abuse of discretion. *Koonce v. Union Elec. Co.,* 831 S.W.2d 702, 704 (Mo.App.E.D.1992); *Horobec v. Mueller,* 628 S.W.2d at 944.

---

5. Although the trial court made no finding one way or the other concerning the ambiguity of paragraph 17, it did find that the language of paragraph 17 was drafted by Plaintiffs' chief executive officer "and any ambiguity in that paragraph must be construed against the plaintiffs."

■ We do not believe that Plaintiffs have sustained that burden in the instant case. The record before us indicates no activity of any nature in the case for almost nine and one-half years. It has been said that delay in prosecuting a case *without a valid excuse* will justify dismissal for failure to prosecute. *State ex rel. Highway & Transp. Comm'n v. Moulder,* 726 S.W.2d at 814. Here, the record reflects no reason for the lack of activity, and there is no indication that any was offered to the trial court when the motion was heard. *See Shirrell v. Missouri Edison Co.,* 535 S.W.2d at 449.

Plaintiffs argue that lack of activity alone is insufficient to justify a dismissal. They contend that their motion to consolidate the two cases was filed before the motion to dismiss and constituted activity by which they were pursuing their case and prosecuting it toward trial. They conclude that this should have prevented the dismissal and, in support, cite *Laurie v. Ezard,* 595 S.W.2d 336 (Mo.App.S.D.1980), and *Vonder Haar Concrete Co. v. Edwards–Parker, Inc.,* 561 S.W.2d 134 (Mo.App.E.D.1978).

In *Vonder Haar,* there were varying periods of inactivity during the twelve-year pendency of the case. A motion to dismiss for failure to prosecute was sustained on the morning trial was scheduled to commence. The appellate court reversed the dismissal, saying that it could not "subscribe to the action of the trial court in this case in dismissing it for failure to prosecute on the day of trial, based on remote, albeit extended, periods of inactivity." 561 S.W.2d at 139. Obviously, the instant case is distinguishable from a case such as *Vonder Haar* which was dismissed when the parties appeared, presumably ready for trial.

In *Laurie v. Ezard,* suit was filed in 1969. On December 1, 1977, defendants filed a motion to dismiss for failure to prosecute, which was sustained on May 26, 1978. In its order of dismissal, the court found no activity from June 22, 1976 to November 4, 1977 except for "taking of Interrogatories." 595 S.W.2d at 337. This court, in reversing the dismissal, found that the order was incorrect in that there had been four depositions taken during that period of time, and also held that

the status of the dismissal must be determined as of the time the motion is made and not on a prior period of time. *Id.* In that case, we noted that defendants filed their motion after plaintiffs "attempted further discovery by moving for an order compelling answers to interrogatories and noticed it for hearing." *Id.* at 338. While we held that the plaintiffs' activities indicated a lack of diligence, we also said that "steps were being taken toward trial at the time of dismissal." *Id.* We said:

> In determining whether to dismiss a dormant case, we believe that the time a case has been on file and its prior inactivity may be considered. However, to dismiss a case for prior inactivity while it was being pursued could cause many cases to be dismissed which should not be.... Our examination of the cases cited by the parties and other cases leads us to believe that only in an unusual situation should a case be dismissed for prior inactivity, on a party's motion, at a time when it appeared to be prosecuted toward trial.

*Id.*

This case is also distinguishable from *Laurie.* Initially, we note that the motion to consolidate relied on by Plaintiffs is not filed with this court and we are left to speculate about what it alleged, the exact nature of the relief requested, or whether Plaintiffs made any effort to call it for hearing.

Reasonable people could also differ about whether a motion to consolidate one case with another necessarily constitutes activity by which that case is being pursued toward trial. Merely because there might have been a consolidation does not require that conclusion. Additionally, the mere act of consolidation would not necessarily prevent dismissal of the instant case for failure to prosecute. See *Watkins Inv. Co. v. William B. Tanner Co.,* 684 S.W.2d 929, 937 (Mo.App.S.D.1985), in which the court indicated that the rules governing dismissal for failure to prosecute apply to counterclaims just as they do to a plaintiff's claim.

In *Cain v. Buehner & Buehner,* 839 S.W.2d 695, 699 (Mo.App.S.D.1992), we affirmed the dismissal of an action for failure to prosecute. In that case, plaintiff's motion to compel answers to his interrogatories was pending when the trial court indicated its

intent to dismiss for failure to prosecute if a motion was not filed showing facts which would justify the case remaining active. In response, the plaintiff filed a request for a jury trial. We held that the dismissal was not an abuse of discretion. *Id.*

The motion to consolidate in the instant case does not alone constitute a conspicuous feature making it unreasonably harsh for the trial court to have dismissed the suit for lack of prosecution. *See Knight v. Kitchen,* 733 S.W.2d 864, 865–66 (Mo.App.W.D.1987). The dismissal here was not clearly against the logic of the circumstances before the court, at least to the extent indicated in the record presented to us. It must be said that reasonable persons could at least differ as to the propriety of the action taken by the trial court, preventing us from concluding that there has been an abuse of discretion. *See Shirrell v. Missouri Edison Co.,* 535 S.W.2d at 450.

Plaintiffs' third point is denied.

The trial court's judgment of April 22, 1985 denying injunctive relief under Count I, and the order of May 3, 1995 dismissing Counts II and III, are affirmed. Because we have affirmed the action of the trial court, two motions to dismiss for lack of standing filed by Defendants are denied as moot.