Robert Shaun YERINGTON,
Plaintiff–Appellant,

v.

LA–Z–BOY, INCORPORATED,
Defendant–Respondent.

No. 25572.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 26, 2004.

Charles Buchanan, Joplin, for appellant.

Rick E. Temple, Springfield, for respondent.

KENNETH W. SHRUM, Judge.

The dispositive question here is whether a "Stipulation For Compromise Settlement," signed by a workers' compensation claimant ("Plaintiff") and his employer ("La–Z–Boy"), clearly and unambiguously included and settled Plaintiff's section 287.780 civil suit against La–Z–Boy for retaliatory discharge.[1] The trial court

---

1. Section 287.780, RSMo (2000) provides: "No employer ... shall discharge or in any

found the stipulation for compromise settlement to be unambiguous; consequently, it refused to consider Plaintiff's parol evidence that the parties never intended the compromise settlement to have that effect and dismissed Plaintiff's civil suit against La–Z–Boy. Plaintiff appeals. This court holds that the stipulation is ambiguous; consequently, we reverse and remand.

While working for La–Z–Boy, Plaintiff sustained an accidental injury to his left shoulder in February 2000, and he reported experiencing left shoulder pain to La–Z–Boy on February 29. On March 3, 2000, La–Z–Boy completed a "Report of Injury" form regarding this incident and filed it with the Division of Workers' Compensation ("Division"). La–Z–Boy fired Plaintiff 45 days later.

On May 1, 2000, Plaintiff filed a claim for compensation with Division, alleging he had suffered a compensable injury. Attorney Charles Buchanan filed the claim for Plaintiff, while attorney William Love represented La–Z–Boy in the workers' compensation case.

While the case was pending before the Division, Plaintiff filed a four-count suit against La–Z–Boy in the circuit court of Newton County, Missouri. The first count thereof charged La–Z–Boy with a retaliatory discharge of Plaintiff in violation of section 287.780.[2] This civil suit was filed by Buchanan and defended by attorney Rick Temple. During the pendency of Plaintiff's civil suit against La–Z–Boy, Buchanan wrote the following to Love: "Thank you for sending me Dr. Ball's rating of 20% of the shoulder. [Plaintiff] is willing to settle his case based upon Dr. Ball's rating. Please let me know your company's position on settlement."

After several months, Love accepted the offer on behalf of La–Z–Boy and mailed a standard form "Division of Workers' Compensation Stipulation for Compromise Settlement" to Buchanan by letter dated January 24, 2002.[3] Buchanan then amended the stipulation and returned it to Love on January 29. Buchanan's proposed amendment read:

"This release does not include any claims the employee may have against employer other than under the Workers' Compensation Act."

In late January or early February 2002, the two lawyers talked about Buchanan's proposed amendment. Later, the stipulation was signed by Plaintiff, his lawyer, and La–Z–Boy's lawyer with the amendment intact. The compromise was then approved by an administrative law judge, and La–Z–Boy paid Plaintiff $14,059.66 per the stipulation.

In September 2002, Temple filed La–Z–Boy's second amended answer in this case. Therein, La–Z–Boy alleged that Plaintiff's civil suit for discriminatory discharge was "barred by accord and satisfaction, based on … [the stipulation] entered into by Plaintiff and approved … on February 21, 2002." In essence, La–Z–Boy's position was that Plaintiff's civil action for retaliatory discharge arose under the Workers' Compensation Law ("the Act"); consequently, the language added to the stipulation, i.e., this "release does not include any claims the employee may have against em-

---

way discriminate against any employee for exercising any of his rights under [the Workers' Compensation Law]. Any employee who has been discharged or discriminated against shall have a civil action for damages against his employer."

2. In June 2002, Plaintiff voluntarily dismissed the other three counts.

3. Herein, we refer to the "Stipulation for Compromise Settlement" simply as the stipulation.

ployer *other than under the Workers' Compensation Act,*" clarified that Plaintiff's civil suit was settled via the stipulation filed in the workers' compensation case.

Ultimately, the court held an evidentiary hearing concerning La–Z–Boy's accord and satisfaction defense. During that hearing, Plaintiff offered to prove by parol evidence that neither he, nor his lawyer, nor Love (as attorney for La–Z–Boy), intended for the stipulation to settle his civil suit for discriminatory discharge, and the amendatory language to that document, as well as discussions leading to its inclusion, were intended as clarification that Plaintiff's civil suit was not being settled and compromised. The trial court ruled it could "only consider parol evidence if the Stipulation is ambiguous," that the "plain and unambiguous meaning of the [amendatory] language [in] the stipulation is that all actions/claims under Missouri Revised Statutes Chapter 287 are barred and prohibited," and "[a]ccordingly, [Plaintiff's] offer of proof is denied." Based on those rulings, the trial court found "accord and satisfaction" for La–Z–Boy and entered judgment in its favor. This appeal by Plaintiff followed.

In his first point, Plaintiff asserts the trial court erred by finding the stipulation contained language that clearly, concisely, and unambiguously settled Plaintiff's civil suit for discriminatory discharge. He argues that the converse is true, namely, that the document at issue "clearly and unambiguously released only the workers' compensation injury." With the latter as his premise, Plaintiff urges that we find, as a matter of law, that his discriminatory discharge suit remains intact and viable, and we reverse and remand for a trial on the merits. Alternatively, Plaintiff's second and third points argue that the stipulation is ambiguous when measured by a "reasonable person" standard; consequently, the trial court erred when it refused to admit parol testimony of the two lawyers who negotiated the settlement as it would have shown the parties intended to settle only the workers' compensation injury claim.

"A conflict between two provisions in an agreement makes the agreement susceptible of two interpretations and therefore ambiguous." *A & L. Holding Co. v. Southern Pacific Bank,* 34 S.W.3d 415, 418[5] (Mo.App.2000). Whether a contract is ambiguous depends on context. *Purcell Tire & Rubber Co., Inc. v. Executive Beechcraft, Inc.,* 59 S.W.3d 505, 510[16] (Mo.banc 2001). "Contract language is not interpreted in a vacuum, but by reference to the contract as a whole." *Id.* at 510[17].

Contract ambiguity is measured by a "reasonable person" standard, that is, ambiguity exists if reasonable people may fairly and honestly differ in the reading of the terms because the terms are susceptible of more than one meaning. *Bydalek v. Brines,* 29 S.W.3d 848, 854 (Mo.App.2000). On the other hand, a contract is not ambiguous simply because the parties disagree over its meaning. *Cosky v. Vandalia Bus Lines, Inc.* 970 S.W.2d 861, 865[1] (Mo.App.1998). Whether a contract is ambiguous is one of law for courts to decide, first by a trial court and, second by an appellate court by reviewing the question *de novo. Waldorf Inv. Co. v. Farris,* 918 S.W.2d 915, 919[5,6] (Mo.App.1996).

When considered as a whole, the stipulation contained provisions that appear to conflict, making it susceptible to two interpretations. To start with, the only case number referred to in the stipulation was "INJURY NO. 00–020206." This was a Division designation and had nothing to do with Plaintiff's civil suit in Newton County (which bears case no. CV300–996CC).

The Newton County civil suit was never mentioned in the stipulation, neither by name, nor reference to case number, nor fact recitals. For instance, the stipulation's first paragraph set forth background facts relating to Plaintiff's employment, accident, and injury.[4] However, La–Z–Boy's firing of Plaintiff was never mentioned therein. Similarly, the sixth paragraph of the document recited "there are dispute(s) between the parties as to nature and extent of disability and future medical liability," but failed to mention the disputed termination of Plaintiff's employment. Likewise, many other paragraphs of the stipulation dealt with issues cognizable only before the Division.[5] As an example, the seventh paragraph of the subject document recited:

> "That because of the disputes, it is agreed by the parties to enter into a lump sum settlement under Section 287.390 ... for the payment of a lump sum of $14,059.66."
>
> "This settlement is based upon a 20% disability to the left shoulder in an injury allegedly sustained by [Plaintiff]."

The "disputes" mentioned in paragraph seven were defined in paragraph six as "the nature and extent of disability and future medical liability." It is clear that this paragraph had no relationship to the Newton County litigation.

The statute mentioned in the seventh paragraph of the stipulation (§ 287.390) authorizes lump sum settlements of workers' compensation claims, provided the settlement is approved by an administrative law judge. Nothing in the Act requires administrative law judge approval of a section 287.780 civil suit settlement. Significantly, the "lump sum" figure ($14,059.66) is exactly what a twenty percent disability rating at the shoulder yields as a permanent partial disability payment when, as here, Plaintiff's permanent partial disability rate was $303.01 per week.[6] Whether read in isolation or in context with the initial six paragraphs, paragraph seven cannot reasonably be read as addressing anything other than Plaintiff's accidental injury claim.

Another good example as to what the stipulation addressed is paragraph eight. It recited that Plaintiff understood the following:

> "[B]y entering into this settlement, [Plaintiff] is forever closing out *this case or claim* ...; that [Plaintiff] will receive no further *compensation or medical aid by reason of this accident* ....; that ... [La–Z–Boy] AND INSURER are released from all liability *for this accident* ... upon approval ... by the Administrative Law Judge." (Emphasis supplied.)

The antecedent to the phrase *"this case or claim"* was obviously Plaintiff's claim for benefits caused by his accidental injury as described in paragraphs one through seven. Other italicized phrases also clearly and unmistakably bespeak settlement of Plaintiff's claims for workers' compensation benefits and cannot reasonably be read as including Plaintiff's civil suit for discriminatory discharge.

---

4. Such facts included that Plaintiff worked for La–Z–Boy on February 24 when he sustained an accidental injury during the course of his employment.

5. Such sections included the following: Paragraph three (recounting Plaintiff's weekly workers' compensation rate); paragraph four (listing his total medical expense); and paragraph five (setting out his total temporary disability pay). These recitals had nothing to do with the Newton County litigation.

6. The "lump sum" calculation is: (0.20 disability) × (232 weeks at shoulder level per section 287.190) × ($303.01 per week permanent partial disability figure) = $14,059.66.

If the foregoing stood alone, reasonable people could not fairly and honestly differ about its meaning. The document, sans amendment, was susceptible of only one reasonable meaning: The stipulation settled and compromised Plaintiff's workers' compensation claim, but left his Newton County civil suit unresolved.

Ambiguity resulted, however, when the following was added to paragraph eight: "This release does not include any claims the employee may have against employer *other than under the Workers' Compensation Act.*" (Emphasis supplied.) This language made the stipulation susceptible of two interpretations, and therefore, it is ambiguous. *A & L Holding Co.*, 34 S.W.3d at 418[5]. Reasonable people could read the specific language as settling only Plaintiff's accidental injury claim, but could also read the more general amendatory language as releasing any claim under the Act, including a section 287.780 civil suit. This latter interpretation is reasonable because *if* Plaintiff was fired for exercising his workers' compensation rights, his only remedy would be *under the Workers' Compensation Law* (§ 287.780). *See Humphrey v. Sequentia, Inc.*, 58 F.3d 1238, 1246 (8th Cir.1995) (holding "where a state legislature enacts a provision within its workers' compensation laws and creates a specific right of action, a civil action brought to enforce that right of action is, by definition, a civil action arising under the workers' compensation laws of that state.") Because both interpretations are

reasonable, the subject document is ambiguous.[7]

When, as here, a contract is ambiguous and other means of construction fail, "use of extrinsic evidence for interpretation is proper." *Thomas v. B.K.S. Development Corp.*, 77 S.W.3d 53, 59[13] (Mo.App.2002). In such an instance, extrinsic or parol evidence is admissible to "explain the positions of the parties at the time the agreement was made so the court may better understand the force and application of the language employed." *Coale v. Hilles*, 976 S.W.2d 61, 66[7] (Mo.App.1998). Stated differently, when a contract is ambiguous, parol evidence can be used "to show the surrounding circumstances and the relationship of the parties as indicating their real intent and the meaning of the contract, and also to show the practical construction placed upon the contract by the parties." *Robson v. United Pac. Ins. Co.*, 391 S.W.2d 855, 861[7] (Mo.1965) (citations omitted). "The real intention of the parties is the universal rule of construction." *Id.* at 861[8].

Here, the trial court should have admitted and considered the offer-of-proof evidence "to show the surrounding circumstances and the relationship of the parties as indicating their real intent and the meaning of the contract, and also to show the practical construction placed upon the contract by the parties." *Id.* at 861[7]. It committed reversible error by refusing to do so. Accordingly, the judgment must be reversed and the case remanded for fur-

---

7. In so holding, we do not ignore Plaintiff's request that we resolve the ambiguity favorably to him by using the maxim that when contract language conflicts, the general terms (amendment) yield to specific ones (other paragraphs of stipulation). *State ex rel Smith v. City of Springfield*, 375 S.W.2d 84, 91[2] (Mo.banc 1964). This rule is merely one aid in contract interpretation. Another rule of contract construction attends here, i.e., if no

evidence exists about the parties' intent, a contract susceptible of two interpretations must be construed against the person who prepared the instrument. *Graham v. Goodman*, 850 S.W.2d 351, 355 (Mo.banc 1993). Since Plaintiff prepared and insisted upon the amendatory language, the impact of the former rule would have to be weighed against the latter.

ther proceedings. The remand proceedings should include a construction of the stipulation by a fact finder to determine if, after all extrinsic evidence has been adduced, there is real conflict therein or if different conclusions can reasonably be drawn therefrom.[8]

In rendering this decision, we have considered and now reject Plaintiff's Point III argument that we should evaluate the offer-of-proof evidence and find as a matter of law: (1) such evidence is not in conflict, and (2) the only reasonable conclusion that can be drawn therefrom is that the document did not release Plaintiff's claim for discriminatory discharge. In making this argument, Plaintiff concedes that "[t]he resolution of this point ... requires the appellate court to evaluate the testimony of the two attorneys that negotiated the settlement agreement." He insists, however, that "[t]here is no significant disagreement in the testimony of the two attorneys, and, therefore, the resolution of this issue requires the court to apply the law to undisputed facts."

▮ Without intending to indicate our view as to Plaintiff's argument, we remand so the trial court initially can make that factual determination. We do so because (a) the trial court has never reached that issue, and (b) additional evidence may shed more light on the parties' real intent and the meaning of the contract. Moreover, remand in this fashion gives both parties a full opportunity to present all relevant evidence to explain this ambiguous document and support or defend other claims that the trial court never addressed, such as Plaintiff's allegation that La–Z–Boy is "estopped" from claiming the stipulation released his civil suit and that the stipulation should be reformed to clearly exclude the alleged civil suit compromise subject.[9] Point I is denied. Point II is granted. Point III is granted to the extent that we reverse and remand for further proceedings. Point III is denied to the extent that it requests this court to rule, as a matter of law, that the parties intended to exclude Plaintiff's section 287.780 civil suit from the stipulation.

In Point VI, Plaintiff charges the trial judge erred by not recusing before trial due to his acquaintanceship with Kevin Wilson. Wilson was a La–Z–Boy employee who had recently been elected to Missouri's general assembly, and he also allegedly played a significant role in firing Plaintiff from his job at La–Z–Boy. In Point VII, Plaintiff complains the trial court erred when, in response to a posttrial motion, he refused to disqualify himself. The disqualification motion was accompanied by the affidavit of a court bailiff. This affiant swore that seven days after the trial judge dismissed Plaintiff's suit, he overheard the trial judge "say something to the effect that Kevin Wilson was now an elected representative and he

---

8. *See Boswell v. Steel Haulers, Inc.,* 670 S.W.2d 906, 914[15] (Mo.App.1984) (holding where contract ambiguity requires resort to extrinsic evidence, a jury case is made if evidence is conflicting or if different conclusions may reasonably be drawn from the evidence; but if there is no real conflict of evidence on any essential facts and the meaning of words used is made clear by the evidence, it become the duty of the court and not the jury to construe the contract).

9. Point IV of Plaintiff's brief charges the trial court erred in not ruling Plaintiff's "estoppel" claim favorably to him. His fifth point charges the trial court erred by not ordering the document reformed. Because additional evidence may be adduced on remand concerning these issues, any opinion rendered on the present record would be advisory only. Appellate courts do not render advisory opinions. *Air Evac EMS, Inc. v. Goodman,* 883 S.W.2d 71, 74[3] (Mo.App.1994). Under the circumstances, we decline to address Points IV and V.

would rather have him as a friend than an enemy."

Even so, we need not address Plaintiff's sixth and seventh points. There is no need to render an opinion on these points because when the trial judge denied Plaintiff's disqualification motion via docket entry, he included this language: "[I]f petition is reinstated and cause goes to trial the cause would be assigned to another judge for hearing." Our reversal and remand of the judgment "reinstates" Plaintiff's petition, thus rendering moot Plaintiff's sixth and seventh points on appeal. This follows because this court interprets the quoted docket entry as compelling the trial judge to recuse from any further participation as to any issue.

The judgment is reversed and the cause remanded.

RAHMEYER, C.J.-P.J., concurs.

BATES, J., concurs.