Dan SHERMAN and Sharon Sherman, his wife, Plaintiffs–Respondents,

v.

Mark DEIHL and David Degraf, d/b/a D & D Enterprises, Defendants–Appellants.

No. 27071.

Missouri Court of Appeals, Southern District, Division One.

June 21, 2006.

Joanne M. McCracken, Garfield, AR, for Appellants.

Abe R. Paul, Pineville, for Respondents.

NANCY STEFFEN RAHMEYER, Presiding Judge.

Dan Sherman ("Sherman") owned land, which he offered for sale through a real estate company; two potential buyers, Mark Diehl and David DeGraff (collectively, "Buyers"), sought to purchase 4.0 acres. A contract, which is the subject of this litigation, was entered into by the parties for the sale of the land. Sherman, however, refused to close on the sale even though Buyers claimed to be ready, willing and able to close. The trial court declared the contract void and Buyers appeal. We affirm.

Sherman obtained title to 4.48 acres of land in McDonald County by a warranty deed, recorded on July 25, 2003. Approximately a week to ten days after recording his deed, he listed the land for sale. Buyers sought to purchase Sherman's property. John Philliber ("Philliber") of Hutchinson Real Estate represented both Sherman and Buyers, and an initial offer to purchase the land for $34,000 was rejected by Sherman. Negotiations continued, but the parties never met; they only communicated indirectly through Philliber.

Eventually, Sherman offered to sell the front 4.0 acres of the 4.48 acre tract for $40,000 and retain the 0.48 acre running across the back portion of the land. The precise language under legal description and address is "Section 20 Towship [sic] 21 Range 31 McDonald County, Missosuri [sic] 4 acres (.48 to remain with seller) With 190 Feet of Road Frontage (Total Acres is [sic] 4.48)." Buyers accepted the offer and also agreed to grant Sherman an easement, although the exact location of the easement was not described in the contract. The language in the contract was "Buyer to grant easement thru [sic] the 4 acres to seller for 20 feet ingress/egress and all necessary utilities to the .48 acre, the .48 acres [sic] to be located in the back portion at the 4.48 piece of property." Buyers also promised to sell back to Sherman acreage if after closing, Sherman later found he needed more land for a septic system on his 0.48 acre, specifically: "In the event that extra land is needed for drainage field lines, buyer agrees to accommodate the seller for needed footage." Immediately following the language for the sell-back provision is a handwritten and initialed statement "at an agreeable figure to both parties."

Another provision which is the subject of this appeal is Paragraph 8, which provides:

**8. SOIL TESTING FOR SEPTIC SYSTEM:** Buyer has been given the opportunity to obtain a soil percolation, soil morphology test or sewage system permit meeting the Health Department regulations concerning septic systems or other sewage treatment systems. Should Buyer decline to obtain any of the above, Buyer agrees to hold Seller(s)

and the Listing Agent Firm and Selling Agent Firm involved in this Real Estate Contract harmless of any matters relative to obtaining such test, permit or the ability to construct an improvement on the described Property that may exist or be discovered (or occur) after closing. Following this paragraph are three boxes labeled A, B, and C. Box B is marked, which states,

A satisfactory soil percolation or soil morphology test by a Designated Representative of the Health Department shall be conducted within *30* days prior to closing. A satisfactory soil percolation or soil morphology test does not necessarily guarantee a septic system permit will be issued in the future. Test to be provided and paid for by: [the boxed checked is Seller].

Immediately following this paragraph are the handwritten words, "sale subject to satisfactory perk test." Philliber wrote these words into paragraph 8(b) of the contract under instruction from Sherman; Sherman's initials appear after this clause.

The initial offer was dated April 22, 2004; Sherman and Buyers memorialized their agreement in a written contract. Buyers signed the contract on April 22, 2004, and Sherman signed the contract on April 29, 2004. The parties agreed on June 25, 2004, as the date of closing.

Subsequent to signing the written contract, Sherman could not obtain a satisfactory soil percolation test ("perk test"). Without a satisfactory perk test, Sherman was unable to place a septic system tank on his 0.48 acre and, without one, the land had no practical use to him. Sherman refused to close although Buyers claimed to be ready, willing, and able to close. Buyers testified that they believed that a satisfactory perk test was for their benefit, that if "something wasn't to [their] satisfaction, [they] could cancel the deal."

Buyers were prepared to close without requiring a satisfactory soil perk test.

Sherman filed a quitclaim deed vesting title from him alone to himself and his wife. They then brought suit seeking a declaration that the real estate contract was void and Buyers counterclaimed for specific performance. The court declared the contract void and incapable of specific performance because a failure of the .48 acre to perk constituted a failed condition precedent of the contract to convey the 4.0 acres and because the contract was vague and ambiguous. Buyers bring this appeal from the denial of their counterclaim for specific performance.

Buyers bring four claims of trial court error: 1) in considering parol evidence when the contract was not honestly and fairly susceptible of more than one interpretation; 2) in finding the grant of the easement as vague and ambiguous because the precise location of the easement is not necessary to the grant of an easement; 3) in declaring the contract void for vagueness and ambiguity in failing to specify a location for drainage field lines or a price for the lines in that the clause created an obligation on the part of the buyers to accommodate the future need for lateral lines and on the part of the seller to pay an agreeable price for the accommodation; and 4) in refusing to grant specific performance because the contract was not vague or ambiguous and clearly contained all essential terms required for specific performance. The essence of each point is that the contract was not vague or ambiguous; however, Point I disposes of the entire appeal. In denying Buyers' first point, that parol evidence was improperly considered, we must necessarily find the contract to be vague and ambiguous. We so find.

In Point I, Buyers contend that the contract was unambiguous on its face and, therefore, the trial court erred in receiving parol evidence to vary or contradict the terms of the agreement. Buyers focus on paragraph 8(b) in their claim that the contract was unambiguous; they contend that the provisions of 8(b) were clearly for the benefit of Buyers and receiving parol evidence to vary or contradict the terms of the agreement by finding that the condition was for the benefit of Sherman was error. This Court is "primarily concerned with the correctness of the trial court's result, not the route taken by the trial court to reach that result." *Business Men's Assur. Co. of America v. Graham*, 984 S.W.2d 501, 506 (Mo. banc 1999). In determining the correctness of the result, this Court "should accept all inferences and evidence favorable to the judgment and disregard all contrary inferences." *Gibson v. Adams*, 946 S.W.2d 796, 800 (Mo.App. E.D.1997).

As noted, a handwritten provision states "sale subject to satisfactory perk test." It is the added, hand-written language, "sale subject to satisfactory perk test," which has created the dispute before this Court. The language does appear forthright; the language "sale subject to satisfactory perk test" would seem to indicate that there would be no sale if there was an unsatisfactory perk test. If that were the case, Buyers could not enforce the contract because there was an unsatisfactory perk test. Buyers contend that the entirety of paragraph 8, including the last clause, must be considered and it was clearly for the benefit of Buyers. They argue that no reasonable person could honestly and fairly conclude that the perk test mentioned meant a perk test on land other than the 4.0 acres that Buyers sought to purchase or that Sherman was restricting his promise to sell upon the condition that land other than the 4.0 acres must perk. Buyers contend that the trial court erred in hearing parol evidence to give meaning to the handwritten clause in paragraph 8.

■ The parol evidence rule constitutes substantive law, and not merely an evidentiary rule. *Don King Equip. Co. v. Double D Tractor Parts, Inc.*, 115 S.W.3d 363, 372 (Mo.App. S.D.2003). "The parol evidence rule bars evidence of prior or contemporaneous oral agreements that vary or contradict the terms of an unambiguous, final, and complete writing, absent fraud, mistake, accident or duress." *Building Erection Servs. Co. v. Plastic Sales Mfg. Co., Inc.*, 163 S.W.3d 472, 479 (Mo.App. W.D.2005). Parol evidence is permissible in interpreting an ambiguous contract, however, when it does not contradict, alter, or vary the contractual terms. *Cameron v. Morrison*, 901 S.W.2d 171, 177 (Mo.App. W.D.1995). Whether an ambiguity exists depends on the context of the agreement. *Yerington v. La–Z–Boy, Inc.*, 124 S.W.3d 517, 520 (Mo.App. S.D.2004).

■ The entire contract must be examined in determining whether there is an ambiguity in the contractual terms. *Id.* Whether a contract is ambiguous is a question of law that this Court decides *de novo*. *Id.* In determining ambiguity, it is important to remember that "the parol evidence rule does not exclude proof that an alleged contract omits a fundamental assumption upon which the agreement is made." *Don King*, 115 S.W.3d at 373. If reasonable people can differ as to the meaning and interpretation of the contract, because the terms are susceptible to more than one meaning, then it is ambiguous. *Yerington*, 124 S.W.3d at 520; *Silver Dollar City, Inc. v. Kitsmiller Const. Co., Inc.*, 931 S.W.2d 909, 914 (Mo.App. S.D.1996).

■ The contract must be examined in its totality to determine the meaning of the phrase at issue. In this contract, Sherman retained the right to an easement across the subject property to access his property

and he retained a vague right to repurchase some portion of the subject property for a septic system. The language of the contract states that .48 acre was to remain with Sherman but, in the event that extra land was needed for drainage field lines, Buyers agreed to accommodate Sherman for the needed footage. The drainage field lines are for a septic system as was the soil testing. It was Sherman who was paying for the perk test, which makes it appear that Sherman had some need for the perk test. If the results of a perk test indicated Sherman needed all four acres for a septic system for the .48 acre that he retained, the contract might have obligated Buyers to sell back all four acres to Sherman.[1] In that instance, the clause could be interpreted to be of benefit to Buyers and Sherman. The plain language of the clause, "sale subject to satisfactory perk test," when considered in the context of this contract, was certainly ambiguous. Parol evidence is permissible when a written contract is ambiguous. *Royal Banks of Mo. v. Fridkin*, 819 S.W.2d 359, 361 (Mo. banc 1991). As such, it was appropriate for the court to consider parol evidence as it did not alter, negate, or vary the terms of the contract. It only attempted to give meaning to the clause "sale subject to satisfactory perk test."

The parol evidence indicated the facts that we have set forth herein. Sherman inserted the clause "sale subject to satisfactory perk test" because he would be unable to place a septic system tank on the retained .48 acre. The phrase, then, was a condition precedent to the completion of the contract according to Sherman. He testified he wanted to retain one-half acre to develop into a duplex, needed an adequate wastewater or sewer capacity, and inserted a contingency clause into the contract. He put the clause in the contract because he needed satisfactory drainage for wastewater, he was not sure where the back lot line was to the property, there were rock formations in the area, and if the soil would not perk, he had no use for the land. Philliber admitted putting the phrase into the contract at Sherman's request and for his benefit. Point I is denied.

The trial court correctly found the contract vague and ambiguous, interpreted the contract to have a failed condition precedent, and properly refused specific performance. The judgment is affirmed.

PARRISH, J., LYNCH, J., concur.

---

1. Although we do not address Buyers' third point, which claims the phrase "at an agreeable price" simply means Buyers agreed to accommodate Sherman at a "reasonable price" should Sherman need additional footage for septic drainage, we certainly give pause to the idea that within the contract itself is a provision that might negate the entire sale, that Buyers agreed to sell back at a reasonable price as much acreage as Sherman needed for his septic system.