**David R. NEVARRE, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Feb. 23, 1996.

Decided April 10, 1996.

Donald R. Shroyer, for Petitioner.

James K. Bradley, Assistant Counsel, and Clifford F. Blaze, Deputy Chief Counsel, for Respondent.

Before DOYLE and FLAHERTY, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

David Nevarre (Nevarre) appeals an order of the Unemployment Compensation Board of Review (Board), which affirmed a referee's decision denying Nevarre's requested training allowances for a physician's assistant program costing approximately $36,000.

This case involves the Trade Act of 1974, 19 U.S.C. §§ 2101–2487, *as amended* (Trade Act), which established a federal program providing trade readjustment allowances (TRA) and trade adjustment assistance (TAA) training benefits to workers in certain

industries who are certified by the United States Secretary of Labor (Secretary) as persons adversely affected by unfair or injurious import competition. *Bureau of Unemployment Compensation Benefits & Allowances v. Unemployment Compensation Board of Review,* 667 A.2d 465, 466· n. 1 (Pa.Cmwlth. 1995). Although the program is a federal one, it is administered through state unemployment compensation bureaus. *Id.*

We are specifically concerned here with TAA training benefits. Section 236 of the Trade Act provides that the Secretary may approve training for a worker, thereby entitling the worker to have training costs paid on his behalf by the Secretary, if the Secretary determines there is no suitable employment available for the worker, the worker would benefit from appropriate training, there is a reasonable expectation of employment following completion of training, training approved by the Secretary is available to the worker from governmental agencies or private sources, and the worker is qualified to undertake and complete the training. 19 U.S.C. § 2296(a). The Secretary prescribes federal regulations pertaining to the approval of TAA training. 19 U.S.C. § 2296(a)(2)(A). Those regulations, which are the focus of this appeal, appear at 20 C.F.R. § 617.22.

The referee made the following findings of fact here:

1. The claimant was employed for 8½ years for Bethlehem Steel Corporation as a systems analyst at a salary of $36,000.00 per year and his last day of work was July 31, 1992.

2. The claimant is an adversely affected worker under Petition # TA–W–27118 which certified TRA benefits for workers of Bethlehem Steel Corporation in Johnstown, Pennsylvania.

3. Petition # TA–W–27118 was certified on May 18, 1993, with an impact date of March 26, 1991, and an expiration date of May 18, 1995.

4. In May of 1995, the claimant filed a Request for Training and Training Allowances to attend St. Francis College in Loretto, Pennsylvania for training as a physician's assistant for the period from August 21, 1994 through August 8, 1997.

5. The cost of the program is as follows:

| | |
|---|---|
| Tuition | $29,620.00 |
| Books | 1,150.00 |
| Lab Fee | 847.00 |
| Equipment | 427.30 |
| PA Fee | 1,110.00 |
| Comp. Fee | 2,580.00 |
| Grad. Fee | 125.00 |
| **TOTAL** | **$35,859.30** |

6. On May 24, 1995, the TAA Unit issued a determination denying the training under Section 617.22 of the Trade Act of 1974.

(Referee's decision, May 30, 1995, p. 1). The referee concluded that the total cost of the requested TAA training was "prohibitive" and upheld the initial determination denying it. (*Id.,* p. 2). The Board affirmed the referee's decision without making new findings of fact.

No constitutional question is raised in this appeal, nor does Nevarre contest the facts, and thus our scope of review is to determine whether an error of law has been committed. Nevarre's statement of the question involved is:

Was the cost of the training and training allowances requested by the Petitioner under § 617.22 of the Trade Act of 1974 unreasonable, merely because it was expensive?

(Petitioner's brief, p. 3).

We are thus presented in this case with the issue of costs as they pertain to effectuating the TAA program. The Trade Act does not place any specific monetary limit on the cost of individual training programs for which applicants may obtain approval, but does include some limitation on total annual funding for TAA training. *See* 19 U.S.C. § 2296(a)(2). At the same time, the act creates obligations to re-train certain adversely affected workers for suitable employment, which is defined as "work of a substantially equal or higher skill level than the worker's past adversely affected employment, and wages for such work at not less than 80 percent of the worker's average weekly wage." 19 U.S.C. § 2296(e). Under these circumstances, some competing concerns

may arise when a college educated, highly skilled applicant, who formerly worked at a high paying position, seeks TAA training. On one hand, it might be unfair and fiscally unsound for that applicant to receive much higher allowances than those provided to his or her fellow adversely affected, perhaps less skilled, workers; on the other hand, it might also be unfair not to recognize what is "suitable" for an individual applicant or to allow the positive background of the applicant, who is no less adversely affected, to become a detriment. Resolving this conflict requires state agencies to balance overall, collective costs against individual training requests. We emphasize that the state agencies no doubt have discretion in this area, as long as they follow the criteria set forth in the regulations.

Nevarre argues in this appeal that the regulations require only that costs be "reasonable" and that high costs are not necessarily unreasonable. He essentially contends that, in assessing reasonableness of cost, the sole pertinent factor to be considered is whether the requested cost of training as a physician's assistant, for example, is reasonable when compared to training costs as a physician's assistant with alternative providers of that same training. Although it seems dubious that the regulations would not also provide for assessing reasonableness of cost based on total absolute cost, not just comparable, relative cost among providers in a particular training field, Nevarre's argument is not without some support. For example, a portion of the regulations he cites state:

(a) Conditions for approval. Training shall be approved for an adversely affected worker if the State agency determines that:....

(6) Such training is suitable for the worker and available at a reasonable cost....

(ii) Available at a reasonable cost means that training may not be approved at one provider when, all costs being considered, training substantially similar in quality, content and results can be obtained from another provider at a lower total cost within a similar time frame. It also means that training may not be approved when the costs of the training are unreasonably high

in comparison with the average costs of training other workers in similar occupations at other providers....

20 C.F.R. § 617.22(a)(6)(ii).

However, Nevarre does not mention the remainder of subsection (ii), which continues:

This criterion also requires taking into consideration ... the least cost to TAA funding of providing suitable training opportunities to the worker.

*Id.* Moreover, as Nevarre acknowledges, the applicable regulations also provide:

(b) Allowable amounts for training.... An application for training *shall be denied* if it is for training in an occupational area which requires an extraordinarily high skill level and for which *the total costs of the training are substantially higher than the costs of other training which is suitable for the worker.*

20 C.F.R. § 617.22(b) (emphasis added). We do not perceive the significance of Nevarre's argument that the Board relied on this language but did not quote the emphasized portion. Nor are we persuaded by his contention that the Board did not find the requested training here requires an extraordinarily high skill level. Instead, the important point is that the regulations do support the proposition that "total costs" themselves—compared to costs of other suitable training, not only to programs in one particular area of suitable training—may be a proper consideration in denying payments for training.

■ Indeed, the referee recognized in her decision that the interpretative authority has stated as much:

The Federal Register dated January [6], 1994, Volume 59, No. 4, provides in part, as follows:

"The 1988 Amendments clearly provide that State administering agencies shall approve training for individual workers at the lowest reasonable cost which will lead to employment and *will result in training opportunities for the largest number of adversely affected workers.* This means that *State administering agencies should avoid approving training for occupations* that require an extraordinarily high skill

level relative to the worker's current skill[s] level and for which *total costs of training*[,] including transportation and subsistence, *are excessively high.*"

(Referee's decision, May 30, 1995, p. 2) (quoting United States Department of Labor comment, 59 Fed.Reg. 906, 924 (1994)) (emphasis added). Of course, "[t]he Department of Labor's interpretations of the [Trade] Act and of its own regulation are entitled to great weight." *Ford v. Unemployment Compensation Board of Review*, 48 Pa.Cmwlth. 580, 409 A.2d 1209, 1211 (1980).

We also note that, while there is little precedent at all in the Commonwealth on TAA, as opposed to TRA, *Wilson v. Unemployment Compensation Board of Review*, 106 Pa.Cmwlth. 306, 526 A.2d 452 (1987) being one of the few cases on the subject, the consideration of total cost as a factor in disapproving TAA training is not wholly without precedent. *See Marshall v. Commissioner of Jobs and Training*, 496 N.W.2d 841 (Minn.Ct.App.1993) (senior financial analyst seeking more than $27,000 for law school attendance, where that "significant" cost itself was weighed, was properly denied TAA training benefits).

■ Thus, we do not agree that the TAA unit or the referee erred in considering total training costs, or that training costs cannot be rejected as too expensive. The remaining question, then, is whether the costs here were "prohibitive," as the referee concluded.

The referee's conclusion is strongly supported by the testimony of the attorney adjustment assistant coordinator for the Department of Labor and Industry, who originally denied Nevarre's training allowance. He testified in these proceedings that "the cost of the [Nevarre's] training was more than the [sic] four times the average cost of training in Pennsylvania." (Notes of Testimony, June 28, 1995, p. 3). The referee's conclusion also comports with the expressed aim of providing training assistance to "the largest number of adversely affected workers," on a limited total budget.

■ Nevertheless, we do not believe that these considerations alone constitute a fully complete and fair inquiry into expense under the regulations. Because it is unclear whether the referee and the Department of Labor and Industry took account of one other important factor required by the regulations, i.e., "the least cost to TAA funding of providing *suitable* training opportunities to the worker," we will not accept the referee's conclusion without further proceedings in this case. 20 C.F.R. § 617.22(a)(6)(ii) (emphasis added). Although the very cost of the program requested by Nevarre and the comparison to one statewide average are compelling indicia that the program cost was "excessively" high, or "prohibitive," those factors do not conclusively establish, for this particular applicant, the requirement that training payments be denied where "total costs of the training are substantially higher than the costs of other training *which is suitable* for the worker." 20 C.F.R. § 617.22(b) (emphasis added).

■ "Suitable training" means, in relevant part, "that the training is appropriate for the worker given the worker's capabilities, background and experience." 20 C.F.R. § 617.22(a)(6)(i). It is undisputed that Nevarre already earned a degree in electronic engineering technology for his former position as a systems analyst, where his salary was $36,000 per year. According to the regulations, this must be afforded some consideration, particularly since Nevarre clearly is an adversely affected worker whom the Trade Act intended to assist. The Department of Labor and Industry's witness did in passing mention Nevarre's degree, but without explaining any relevance of it.

Standing alone, the statement that a training program cost is four times the statewide average potentially ignores differences between individual backgrounds and capabilities, and might penalize a person such as Nevarre who apparently has the ability to be successfully trained in highly skilled positions. On the other hand, if the statewide average cost would provide *suitable* training for Nevarre, then, despite the fact that he meets other requirements of the Trade Act for subsidizing appropriate training, training

benefits may be inappropriate based on the expense of his chosen field of training. Under the regulations, if areas of training other than as a physician's assistant are also suitable and cost less, Nevarre's training request could properly be denied. Still, this proposition assumes that there has been some examination of what is *suitable* for this applicant and, after he has requested suitable training, some indication presented that there is less expensive, alternative *suitable* training. We decline to make such an assumption on this record and absent an express explanation or clarification in the decision denying benefits.

 In sum, training costs that are comparable to costs among providers of similar training may nonetheless be denied as excessive or prohibitive. Such a denial may be sustained after weighing (1) factors such as total costs themselves and their relationship to average training costs *and* (2) the total cost of a program as compared to costs of other training that would be suitable for the particular applicant. Because it is not apparent that the referee or the Department of Labor and Industry's witness gave due regard to the costs of other *suitable* training for Nevarre, we shall remand this case so that evidence can be adduced and an explicit finding made on a comparison of the requested training costs to costs of other suitable training.

Accordingly, the Board's order is vacated and this case is remanded for further proceedings consistent with this opinion.

### ORDER

AND NOW, this 10th day of April, 1996, the order of the Unemployment Compensation Board of Review, No. B–339756, dated August 23, 1995, is hereby vacated and this case is remanded for further proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.