## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 36072

RUTH A. CREPS,                                          )
                                                       )       **Boise, June 2010 Term**
    Claimant-Appellant,                              )
                                                       )       **2010 Opinion No. 72**
v.                                                     )
                                                       )       **Filed: June 28, 2010**
IDAHO DEPARTMENT OF LABOR,                             )
                                                       )       **Stephen Kenyon, Clerk**
    Respondent.                                      )

Appeal from the Industrial Commission of the State of Idaho.

The decision of the Industrial Commission is <u>affirmed</u>.

Thomas Tharp, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent.

Submitted on the briefs.

_____

HORTON, Justice

This is an appeal from the Idaho Industrial Commission's (Industrial Commission) determination that the Idaho Department of Labor (IDOL or the Department of Labor) properly denied Ruth Creps' (Creps) application for assistance from the Federal Trade Adjustment Assistance (TAA) program. The Industrial Commission found that the Executive MBA program offered by Boise State University (BSU) was substantially similar to BSU's traditional MBA program "in the content, quality and result" and denied the application based on the requirements of 20 C.F.R. § 617.22(a)(6), governing applications to the TAA program. Creps now appeals. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Creps was formerly employed by Micron Technology and was laid off in 2007. In 2008, Creps applied for assistance from the TAA program to support her participation in BSU's Executive MBA program. The TAA program is designed to provide training for workers who have been laid off as a result of international trade competition. 19 U.S.C. § 2296. The

Department of Labor, the agency responsible for administering the TAA program in Idaho, rejected Creps' application stating that:

> According to the information provided, the Executive MBA program at BSU costs $41,000, while the traditional MBA program at BSU costs approximately $14,000. A BSU representative confirmed that the end result of each program is the same. Therefore, the Executive MBA program cannot be approved due to the high cost.

Both BSU's Executive MBA program and its traditional MBA program lead to an MBA degree. The two programs differ in that the Executive MBA program is geared towards individuals with significant work experience, it does not require that applicants take the GMAT admissions test, and the curriculum provides more tailored coursework with executive coaching and residency programs. However, the cost of the Executive MBA program is approximately $41,000, while the traditional MBA program costs approximately $14,000. This cost difference is partially due to the fact that books, materials and fees are included in the Executive MBA's costs.

Creps appealed the Department of Labor's decision to an appeals examiner who found that the two programs were "not equal in content and quality, and although the result in obtaining an MBA degree is the same, the MBA degrees are not 'equal' in every way as the Department asserts." Because the "Executive MBA program will better allow the claimant to reach" the goal of securing employment at a skill level similar to the level at which she was previously employed, the appeals examiner approved Creps' application.

The Department of Labor then appealed to the Idaho Industrial Commission. The findings of fact by the Industrial Commission included that Creps was laid off and previously earned approximately $90,000; that she applied to enter the Executive MBA program at BSU which costs approximately $41,000; that the Department of Labor denied Creps' application for TAA assistance because the traditional MBA program costs $14,000; and that both traditional and Executive MBA programs are two year programs and result in the same degree, although the Executive MBA program involves students with more professional experience and has smaller, more integrated courses than the traditional MBA program. Based on these findings and the language of 20 C.F.R. § 617.22(a)(6), which governs TAA approval, the Industrial Commission found that Creps "has not persuaded us that the programs are so dissimilar in the training they offer in [her] chosen career that they are not comparable in the context of the TAA criteria." The Industrial Commission therefore found that the denial of Creps' application was proper because

the Executive MBA program "does not satisfy the 'lowest cost' requirement of 20 C.F.R. § 617.22(a)(6) . . . ." Creps now appeals.

## II. STANDARD OF REVIEW

Reviews of TAA determinations are "subject to review in the same manner and to the same extent as determinations and redeterminations under the applicable State law, and only in that manner and to that extent." 20 C.F.R. § 617.51(a). The TAA is an unemployment benefit and the Idaho Industrial Commission is authorized to hear and decide matters appealed to it in accordance with the Idaho Employment Security Law. I.C. § 72-1332. *See also Hampe v. Butler*, 364 F.3d 90, 91 (3d Cir. 2004) ("The Trade Act of 1974 . . . provides unemployment compensation, training, job search, relocation, allowances and other benefits to workers who have lost their jobs as a result of competition from imports.").

> When this Court reviews a decision of the Industrial Commission, it exercises free review over questions of law, but reviews questions of fact only to determine whether substantial and competent evidence supports the Commission's findings. Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion. Because the Commission is the fact finder, its conclusions on the credibility and weight of the evidence will not be disturbed on appeal unless they are clearly erroneous. This Court does not weigh the evidence or consider whether it would have reached a different conclusion from the evidence presented.

*Eacret v. Clearwater Forest Indus.*, 136 Idaho 733, 735, 40 P.3d 91, 93 (2002) (citations omitted).

## III. ANALYSIS

This case presents a question of the application of the TAA. 19 U.S.C. §§ 2101-2487. The Trade Act of 1974, which established the TAA, was enacted, in part, "to assist industries, firm, [sic] workers, and communities to adjust to changes in international trade flows . . . ." 19 U.S.C. § 2102(4). The TAA provides tuition and some of the incidental costs to retrain workers who have been laid off as a result of international competition. 19 U.S.C. § 2296. While the program is overseen at the national level by the U.S. Department of Labor, states are provided with funding to distribute according to federal regulations.

Eligibility for TAA funding is governed by 20 C.F.R. § 617.22. Subsection (a) lists six criteria required for TAA assistance. The parties agree that Creps satisfies the first five criteria. The Department of Labor, however, determined that Creps had not satisfied the sixth criterion,

which specifies that the "training is suitable for the worker and available at a reasonable cost." 20 C.F.R. § 617.22(a)(6).   In relevant part, the regulation provides:

> (a) Conditions for approval.  Training shall be approved for an adversely affected worker if the State agency determines that:
>> . . . .
>> (6) Such training is suitable for the worker and available at a reasonable cost.
>>> (i) Such training means the training being considered for the worker.  Suitable for the worker means that paragraph (a)(5) of this section is met and that the training is appropriate for the worker given the worker's capabilities, background and experience.
>>> (ii) Available at a reasonable cost means that training may not be approved at one provider when, all costs being considered, training substantially similar in quality, content and results can be obtained from another provider at a lower total cost within a similar time frame.  It also means that training may not be approved when the costs of the training are unreasonably high in comparison with the average costs of training other workers in similar occupations at other providers.   This criterion also requires taking into consideration the funding of training costs from sources other than TAA funds, and the least cost to TAA funding of providing suitable training opportunities to the worker.  Greater emphasis will need to be given to these elements in determining the reasonable costs of training, particularly in view of the requirements in § 617.11(a) (2) and (3) that TRA[1] claimants be enrolled in and participate in training.
>>> (iii) For the purpose of determining reasonable costs of training, the following elements shall be considered:
>>>> (A) Costs of a training program shall include tuition and related expenses (books, tools, and academic fees), travel or transportation expenses, and subsistence expenses;
>>>> (B) In determining whether the costs of a particular training program are reasonable, first consideration must be given to the lowest cost training which is available within the commuting area.  When training, substantially similar in quality, content and results, is offered at more than one training provider, the lowest cost training shall be approved; and
>>>> (C) Training at facilities outside the worker's normal commuting area that involves transportation or subsistence costs which add substantially to the total costs shall not be approved if other appropriate training is available.

---

[1]   Trade Readjustment Assistance (TRA) benefits function essentially as an extension of state unemployment compensation benefits.  *Sturni v. Unemployment Comp. Bd. of Rev.*, 625 A.2d 727, 728 (Pa. Commw. Ct. 1993).

*Id.* The Industrial Commission decided this case under the provisions of 20 C.F.R. § 617.22(a)(6).[2]

Based upon the Industrial Commission's findings and legal conclusions, this opinion will consider three issues: First, whether the regulatory provisions referencing "another provider" and "more than one training provider" prohibit a comparison of two training programs from a single provider; second, in the event that 20 C.F.R. § 617.22(a) allows training programs from the same provider to be compared, whether the Industrial Commission erred in determining that BSU's Executive and traditional MBA programs were comparable; and finally, whether we may address Creps' argument that the traditional MBA program exceeds the 104 week period allowed for completion of the TAA training. These issues are addressed in turn.

**A. 20 C.F.R. § 617.22(a)(6) permits consideration of two similar training programs from the same provider.**

As noted above, the first question regards the language, both in 20 C.F.R. § 617.22(a)(6)(ii) and 20 C.F.R. § 617.22(a)(6)(iii)(B) regarding "another provider" or "more than one training provider" and whether the use of that language precludes a comparison between two similar training programs from the same provider. Because both the Executive MBA program and the traditional MBA program are offered by BSU, Creps argues that "[t]he clear and unequivocal language of the regulation requires the state administrator to compare program costs between two programs only when they are available from separate competing providers." The Department of Labor concedes that BSU is a single provider, stating that "BSU is the provider of the requested executive MBA program, a self supporting program within the university and business college, and it is also the provider of another traditional MBA program."

Apparently because the appellate courts of this state have not previously considered issues relating to the TAA, the Industrial Commission considered cases from other jurisdictions and concluded that "[t]he language of 20 C.F.R. § 617.22(a)(6)(ii) makes it clear that IDOL may not approve training at a higher cost when a lower cost program is available." The Industrial Commission reasoned that "state agencies, such as IDOL, are under a mandate to allocate training dollars in a manner that the greatest number of workers will derive the greatest benefit

---

[2] The letter from IDOL states that it was acting under "C.F.R. 617.22(6)(iii)(b)" which does not conform to the structure of 20 C.F.R. § 617.22. Though the Department of Labor now states that "[t]he correct citation is 20 C.F.R. § 617.22(b)," the focus before the Industrial Commission and appeals examiner was on 20 C.F.R. § 617.22(a)(6). Because the decision of the Industrial Commission relied on 20 C.F.R. § 617.22(a)(6), we do not reach the question of whether the Department of Labor would have been justified in denying Creps' application under 20 C.F.R. § 617.22(b).

for the lowest cost." In support of this conclusion, the Industrial Commission cited *Wilder v. Employment Security Commission of North Carolina*, 618 S.E.2d 863 (N.C. Ct. App. 2005), and *Nevarre v. Unemployment Compensation Board of Review*, 675 A.2d 361, 363-65 (Pa. Commw. Ct. 1996). The Industrial Commission's statement is unquestionably an accurate statement of the duties imposed upon state agencies administering TAA funds. However, neither of the cases cited address the specific issue raised by Creps: whether it is only training programs offered by "another provider" that may be compared when determining whether the costs of a training are reasonable according to 20 C.F.R. § 617.22(a)(6).

Creps argues that the language "training may not be approved when the costs of the training are unreasonably high in comparison with the average costs of training other workers in similar occupations at other providers" in 20 C.F.R. § 617.22(a)(6)(ii) must be read so as to give effect to the inclusion of the phrase "other providers." We acknowledge that this Court has consistently stated that "[w]hen construing a statute, the words used must be given their plain, usual, and ordinary meaning, and the statute must be construed as a whole." *E.g. Athay v. Stacey*, 142 Idaho 360, 365, 128 P.3d 897, 902 (2005).

Despite the references to other providers found in 20 C.F.R. §§ 617.22(a)(6)(ii) and 617.22(a)(6)(iii)(B), we find that the Industrial Commission properly concluded that 20 C.F.R. § 617.22 confers discretion to the state agency to determine what constitutes cost-effective training opportunities, including where a single provider offers similar training programs, albeit by the wrong route. This Court has, in the past, affirmed the Industrial Commission on different grounds than were the basis of the Industrial Commission's decision. *Buffington v. Potlatch Corp.,* 125 Idaho 837, 839, 875 P.2d 934, 936 (1994). This treatment is consistent with our review of decisions from the trial courts of this state. "Where an order of a lower court is correct, but based upon an erroneous theory, the order will be affirmed upon the correct theory." *McGrew v. McGrew*, 139 Idaho 551, 559, 82 P.3d 833, 841 (2003) (citing *Andre v. Morrow*, 106 Idaho 455, 459, 680 P.2d 1355, 1359 (1984)). Rather than the first two sentences of 20 C.F.R. § 617.22(a)(6)(ii), which the Industrial Commission focused on, the first sentence in 20 C.F.R. § 617.22(a)(6)(iii)(B) does not refer to a second provider. 20 C.F.R. § 617.22(a)(6)(iii)(B) specifies that "first consideration must be given to the lowest cost training which is available within the commuting area." This provision only mentions the lowest cost training, suggesting that the identity of the provider is irrelevant. Such a reading is consistent with the Congressional

intent reflected in the underlying statute.  The statute makes no mention of providers, requiring only that the "training [be] suitable for the worker and available at a reasonable cost . . . ."  19 U.S.C. § 2296(F).  The criteria listed in 20 C.F.R. § 617.22(a) "are intended to assure that training will lead to a specific occupational goal." Trade Adjustment Assistance for Workers; Amendment of Regulations, 59 Fed.Reg. 906, 924 (Jan. 6, 1994).   Where a single provider offers substantially similar training at a lower cost, limiting TAA funding to the less expensive option fulfills the underlying objective of the statute to provide cost-effective training to affected workers and the regulations designed to implement it.

We therefore conclude that 20 C.F.R. § 617.22(a)(6)(iii)(B) permits comparison of substantially similar training programs offered by a single provider.

**B. The Industrial Commission did not err in determining that BSU's Executive MBA program is substantially similar to the traditional MBA program.**

The second question we consider is whether the Industrial Commission erred in determining that the Executive MBA and traditional MBA programs were substantially similar. The underlying facts are not in dispute.  The Industrial Commission focused on the fact, undisputed by Creps, that the two programs resulted in the same degree.  The Industrial Commission further noted that no evidence had been presented that there were any specific employers who would require an Executive MBA over a traditional MBA.  However, it is also undisputed that there are differences in the structure and the content of the two programs.  In particular, the Industrial Commission noted that there was evidence that the Executive MBA program "is geared towards executives who already have over six years of experience.  Further, [Executive MBA] differences include a smaller class size, classes are taught in a more integrated nature, and the instructors have the capacity to teach executives."

The fundamental similarities between the two programs, particularly the common degree, bring the programs into the realm where the Department of Labor's limited discretion in disbursing TAA funding comes into play. *See, e.g. Nevarre v. Unemployment Comp. Bd. of Rev.*, 675 A.2d at 364 ("[T]he state agencies no doubt have discretion in this area, as long as they follow the criteria set forth in the regulations.").  Considering the basic similarity of the MBA programs and the remedial nature of the TAA program, we are unable to conclude that the Industrial Commission erred in determining that the traditional MBA program was a less costly equivalent to the Executive MBA program.

**C. We do not reach the question of whether the traditional MBA program exceeds the allotted period for training programs.**

On appeal, Creps argues that "the [traditional] MBA program could well exceed the 104 week period allowed for completion of training under the TAA."[3] The Department of Labor argues that this issue was not raised before the Industrial Commission and should not be considered by this Court. The Department of Labor is correct.

Creps submitted a twenty-six page brief to the Industrial Commission in support of her claim. In her description of the facts and course of proceedings, Creps did observe that "the traditional MBA program would have required her to take additional pre-requisite courses and the GMAT" before the appeals examiner and that "there are hidden costs inherent in the traditional MBA program including the fact that it takes longer than two years to complete the program . . . ." Creps did not argue that the traditional MBA program was not suitable training because of the length of the program. Rather, these facts were advanced in support of her argument that the traditional MBA program was not substantially similar to the Executive MBA program. As discussed above, the Industrial Commission's findings regarding the substantial similarity of the Executive and traditional MBA programs was not in error.

Creps' argument on appeal is different. Here, she argues that the two programs are not comparable because one (the Executive MBA) was suitable training according to 20 C.F.R. § 617.22 while the other (the traditional MBA program) was not and that they are not comparable because of that difference. Issues not raised before the Industrial Commission and presented for the first time on appeal will not be considered by this Court. *Higgins v. Larry Miller Subaru-Mitsubishi*, 145 Idaho 1, 6, 175 P.3d 163, 168 (2007). As Creps did not present this theory to the Industrial Commission, we decline to address it.

## IV. CONCLUSION

We affirm the Industrial Commission's determination that Creps' application for TAA training was properly denied under 20 C.F.R. § 617.22(a)(6). Costs to Respondent.

Chief Justice EISMANN, Justices BURDICK, J. JONES and W. JONES **CONCUR**.

---

[3] Creps' briefing erroneously cites 20 C.F.R. 617.15 in support of this proposition. This regulation governs TRA assistance. However, Creps is correct as to the maximum duration of TAA training. 20 C.F.R. 617.22(f)(2), governing TAA assistance, provides that "[t]he maximum duration for any approvable training program is 104 weeks…."