

# Missouri Court of Appeals

## Southern District

### Division One

SANDY METZGER, )
                         )
       Petitioner-Respondent, )
                         )
v. )    No. SD34014
                         )    Filed:  3-15-16
CHARLES FRANKLIN, )
                         )
       Respondent-Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF BUTLER COUNTY

Honorable John H. Shock, Associate Circuit Judge

### AFFIRMED IN PART, REVERSED IN PART AND REMANDED

Charles Franklin (Father) appeals from a judgment increasing the amount of child support that he pays to Sandy Metzger (Mother).  *See* § 452.340; Rule 88.01, Form 14.[1]  Presenting three points on appeal, Father contends the trial court erred in increasing his child support obligation because:  (1) the amount of income imputed to him was too high as "there was no showing that [he] previously had the opportunity nor would he in the future have the opportunity to earn the amount of income imputed to him"; (2) the court failed to consider the enumerated factors under § 452.340 and make appropriate findings;

---

[1]  All references to statutes are to RSMo Cum. Supp. (2014).  All references to rules and Form 14 are to Missouri Court Rules (2015).

and (3) the court included Father's "Training Readjustment Allowance (TRA)" benefits in determining gross income when the benefits should have been excluded. Because Father's first point concerning the amount of income imputed to him has merit, we reverse and remand for further proceedings consistent with this opinion. In all other respects, we affirm.

Our review in this court-tried case is governed by Rule 84.13(d), and "we must affirm the trial court's judgment unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law." *In re Marriage of Adams*, 414 S.W.3d 29, 32 (Mo. App. 2013). In addition, "[a]n award of child support is within the sound discretion of the trial court." *Lokeman v. Flattery*, 146 S.W.3d 422, 429 (Mo. App. 2004). We will not disturb the award unless there is a manifest abuse of that discretion or that the evidence is palpably insufficient to support it. *Id*.; *see In re Marriage of McDaniel*, 419 S.W.3d 828, 834 (Mo. App. 2013).

This Court views the evidence in the light most favorable to the judgment and defers to the trial court regarding credibility determinations and assigning weight to witness testimony. *Id*. The trial court is free to believe all, none, or part of the testimony of any witness. *In re Marriage of Miller*, 467 S.W.3d 300, 301-02 (Mo. App. 2015). Further, Rule 73.01(c) requires a party who requests specific findings to do so on the record before introduction of evidence. *Id*.; *In re Marriage of Geske*, 421 S.W.3d 490, 497 (Mo. App. 2013). "All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01(c); *Adams*, 414 S.W.3d at 33. The following facts have been prepared in accordance with these principles.

Father married Mother in 2005 and, within a few years, adopted her two daughters: Daniale and Katlynn (referred to collectively hereinafter as the children). In October 2009, when the children were ages 14 and 12 respectively, the parties divorced. The judgment awarded sole physical custody of the children to Mother, subject to Father's visitation, and ordered him to pay $700 a month child support. In 2012, a judgment of modification reduced Father's support obligation to $350 after a finding that Daniale was emancipated. The judgment also approved Mother's relocation request to move with the children to Herrin, Illinois.

In May 2014, Mother filed a motion to modify support. Mother requested that Father's support obligation be increased, *inter alia*, to pay a share of college expenses for Katlynn, then 19.[2]

In August 2014, Father lost his job of 13 years when his employer, Nordyne, relocated to Mexico. Soon thereafter, Father filed a cross motion to modify support, requesting that his support obligation be decreased due to his job loss.

On March 20, 2015, the trial court held a hearing on both motions to modify. Neither party requested specific findings of fact. Mother and Father testified, and each submitted a Form 14. Father also introduced into evidence his Income and Expense Statement, Exhibit B, which showed an annual gross income of $46,890 in 2013, the highest amount of gross income Father earned in the three years shown.[3]

---

[2] Since Mother's relocation in 2012, Katlynn had not had any overnight visitation with Father. Mother also requested that she be entitled to a 14% overnight credit and a 20% increase in support. Father, on the other hand, responded that he has communicated his desire for Katlynn's overnight visitation on numerous occasions, but Mother has not encouraged it.

[3] The total annual gross income for 2014 was left blank. The total for 2012 was $46,491 and for 2011 was $42,671.

Father testified that on August 7, 2014, his last day at Nordyne, he received a severance package that was to compensate him for an additional eight and a half months. The total gross amount was around $33,000. Because there were fewer opportunities in his field of work, Father also enrolled in a Trade Adjustment Assistance (TAA) program, which is a federal program that assists workers who have lost their jobs as a result of foreign trade by offering retraining programs.[4] As part of Father's program, he receives $320 a week in what he described as "unemployment/TRA benefits" while attending college for retraining.[5] Father started his retraining program in January 2015 and plans to graduate in May 2016. Father testified that he must be enrolled in college full-time and would be ineligible for the program if he became employed. Father is retraining for medical coding and billing positions because of the number of jobs available. Starting pay in this area is between $18 and $19 an hour, which at most results in an annual gross income of $39,520.

Mother testified that she earns $57,000 per year, and her husband earns an average of $110,000. Katlynn also works part-time and earns an average income of $150 per week. She does not qualify for grants due to the income earned by Mother and her husband, and Katlynn has not applied for any student loans.

With respect to Mother's motion to increase support, the court denied the motion. The court specifically found that Father "does not have the financial ability, at the present

---

[4] "The TAA provides tuition and some of the incidental costs to retrain workers who have been laid off as a result of international competition." *Creps v. Idaho Dept. of Labor*, 238 P.3d 1284, 1286 (Idaho 2010); 19 U.S.C. § 2296.

[5] When Father was asked if he was receiving $320 a week through unemployment, Father responded "Yes and no" and explained that he "had to draw unemployment for a period of time. And then when I started going to school, it switched over and now they call it T.R.A. benefits."

4

time, to pay a proportionate share of the college expenses[.]" The court, however, also denied Father's counter motion to reduce support. Rejecting both parties' Form 14s, the court created its own Form 14. The court increased Father's support from $350 to $479 per month, commencing June 1, 2015. The increased sum is the presumed amount of child support based on an annual gross income that the court imputed to Father of $55,514. The court arrived at that figure by considering all the income Father received during the year leading up to the March 2015 hearing. This included Father's salary, his severance and the TRA benefits.

After the court denied Father's motion for reconsideration and/or new trial, Father filed this appeal. Additional facts will be included below as we address Father's three points of error. For ease of analysis, we will address these points out of order.

*Point 3*

Father's third point argues that the trial court abused its discretion "in its inclusion of TRA benefits because they are excluded from 'gross income' for Form 14 purposes under the category of 'public assistance benefits having eligibility based on income[.]'" We disagree.

The Directions for Form 14, Line 1 define "gross income" and provide in pertinent part:

> **"Gross income" includes**, but is not limited to, salaries, wages, commissions, dividends, severance pay, pensions, interest, trust income, annuities, partnership distributions, social security benefits, retirement benefits, workers' compensation benefits, ***unemployment compensation benefits***, disability insurance benefits, social security disability benefits (SSD) due to a parent's disability, veterans' disability benefits and military allowances for subsistence and quarters.
> ….
> **Excluded from "gross income"** is temporary assistance for needy families (TANF) payments, Medicaid benefits, supplemental security income (SSI) benefits, social security disability (SSD) benefits received on

5

behalf of a child, food stamps, general assistance benefits, other ***public assistance benefits having eligibility based on income***, and child support received for children not the subject of this proceeding.

Form 14, Line 1, Gross income (emphasis added).

Here, Father only generally argues that his TRA benefits fall into the category of "public assistance benefits having eligibility based on income," but cites no direct authority that the TRA benefits belong in that category. We are instead persuaded that "TRA benefits [are] a supplement to state unemployment benefits." ***Smotherson v. Div. of Employment Sec.***, 265 S.W.3d 359, 360 (Mo. App. 2008) ("[a]s a result Chapter 288 of the Missouri Employment Security law applies to claims for TRA benefits"); *see* ***Creps v. Idaho Dept. of Labor***, 238 P.3d 1284, 1287 n.1 (Idaho 2010) ("Trade Readjustment Assistance (TRA) benefits function essentially as an extension of state unemployment compensation benefits"). Unemployment compensation benefits are specifically included in gross income. *See* Form 14, Line 1, Gross income; *see, e.g.*, ***Honderick v. Honderick***, 984 S.W.2d 205, 213 (Mo. App. 1999). We also note that Father similarly described his own benefits as "unemployment/TRA benefits." As such, the trial court properly included Father's TRA benefits in its Form 14 calculations. Therefore, Point 3 is denied.

## *Point 1*

Father's first point contends the trial court abused its discretion in imputing to him a gross annual income of $55,514 because "there was no showing that [he] previously had the opportunity nor would he in the future have the opportunity to earn the amount of income imputed to him." The following facts are relevant to this point.

The trial court explained its calculations as follows:

6

[Father's] gross income from March 20, 2014 to March 20, 2015 (the date of the hearing on the Motions to Modify) was $55,514.12. He received 10 salary payments of $1,937.56 each from 3/20/14 through 8/7/14. He received severance pay in the amount of $32,938.52. He received 10 payments of $320 each from 1/15/15 through 3/20/15. The gross income of $55,514.12 divided into the 12 month period yields $4,626.18 per month.[6]

It is well settled that a trial court may impute gross income "[i]f a parent is unemployed or found to be underemployed[.]" Form 14, Line 1, Gross income. "Imputed Income" is addressed in Comment H to Form 14 and provides:

H. *COMMENT*: **Imputed Income**: When determining whether to include imputed income and, if so, the amount to include in a parent's "gross income," a court or administrative agency shall consider all relevant factors, including:

(1) The parent's *probable earnings* based on the parent's work history during the three years, or such time period as may be appropriate, immediately before the beginning of the proceeding and during any other relevant time periods;

(2) The parent's occupational qualifications;

(3) The parent's employment potential;

(4) The available job opportunities in the community; and

---

[6] These calculations work out as follows:

| | | |
|---|---|---|
| Salary: | $1,937.56 x 10 = | $19,375.60 |
| Severance: | | 32,938.52 |
| TRA benefits: | $320 x 10 = | 3,200.00 |
| | | $55,514.12 ÷ 12 = $4,626.18 a month. |

On the court's Form 14, the court added Father's imputed monthly income above to Mother's monthly income, and based on that total, arrived at the presumed monthly support obligation on the appropriate schedule. After adding a $50 increase in health insurance and providing a 9% adjustment in overnight visitation in Father's favor, the court arrived at Father's presumed monthly support obligation of $479. Father does not challenge any other calculation except the amount of gross income imputed to him.

7

(5) Whether the parent is custodian of a child whose condition or circumstances make it appropriate that the parent not be required to seek employment outside the home.

*Id*. (emphasis added). "A parent must have the capacity to earn income which is imputed to him or her, and an award of child support must be supported by evidence of the parent's ability to pay." ***Buchholz v. Buchholz***, 166 S.W.3d 146, 153 (Mo. App. 2005).

Factors of particular significance here include: (1) Father's "probable" earnings based on an earnings history; (2) his employment potential; and (3) available job opportunities in the community. With respect to the first factor, "[i]n determining probable earnings, the trial court may rely on any time period as may be appropriate under the circumstances." ***Cross v. Cross***, 318 S.W.3d 187, 192 (Mo. App. 2010). As a general statement, however, "when one year's earnings appear to be an anomaly or aberration, the trial court should not use that year as the sole basis for determining a parent's income per Form 14." ***Pearcy v. Pearcy***, 193 S.W.3d 844, 847 (Mo. App. 2006); *see **In re Marriage of Spence***, 943 S.W.2d 373, 379-80 (Mo. App. 1997). "The point is that, whatever income figure is used, this figure must be the most accurate figure of income expectation." ***Pearcy***, 193 S.W.3d at 848.

Father argues that the single year's income of $55,514, from March 2014 to March 2015, is an anomaly.[7] He maintains that amount is not representative of his past, present or future income, and therefore is not the most accurate predictor of his income. We agree. In the past, the most Father had earned was $46,890. In the future, he anticipates earning no more than $39,520. The record in this case simply does not

---

[7] Father points out the August 2014 severance of nearly $33,000 was to compensate him for an additional eight and a half months, lasting beyond March 2015, and therefore inflated the amount of income he would have earned at Nordyne in the time period the court used.

8

support the conclusion that Father's "probable" earnings are $55,514. *See, e.g.*, **Pearcy**, 193 S.W.3d at 848 (because the income year the trial court used was abnormally low, that figure did not represent an accurate indication of wife's income for both the past and future, constituting an abuse of discretion); *see also* **Spence**, 943 S.W.2d at 379-80 (although husband had earned higher income one year, that amount was not typical and the trial court did not abuse its discretion in using lower income for Form 14 purposes). We therefore conclude that the trial court abused its discretion in imputing to Father an annual gross income of $55,514. Point 1 is granted.

*Point 2*

Father's second point contends the trial court abused its discretion in failing to consider the enumerated factors under § 452.340 and make appropriate findings. Because our disposition of Point 1 requires a remand in this case, we need not address Point 2. It is denied as moot.[8]

The judgment is reversed as to the child support award based on the amount of income imputed to Father, and the case is remanded for further proceedings consistent with this opinion. In all other respects, the judgment is affirmed.

JEFFREY W. BATES, J. – OPINION AUTHOR

DANIEL E. SCOTT, P.J. – CONCUR

MARY W. SHEFFIELD, C.J. – CONCUR

---

[8] Because this case is being remanded, we remind Father that he must properly request specific factual findings before the trial court is required to make them. *See* Rule 73.01(c); **Geske**, 421 S.W.3d at 497.