**David G. DENNY and Linda J. Denny, Trustees of the David G. Denny and Linda J. Denny Revocable Trust Dated June 17, 2003, Plaintiffs-Respondents,**

v.

**REGIONS BANK d/b/a Regions Mortgage, et al., Defendants-Appellants.**

**No. SD 34697**

Missouri Court of Appeals,
Southern District,
Division Two.

Filed: September 19, 2017

Attorney for Appellants: Mark C. Fels of Springfield, MO.

Attorney for Respondents David and Linda Denny: Paul F. Sherman of Springfield, MO.

Attorney for Respondent S&W Foreclosure Corp.: Michael J. Gilgrist of Maryland Heights, MO Respondents U.S. Bank, N.A., Tarquad Corp., and Terah Richardson acting pro se.

JEFFREY W. BATES, J.

This case is on appeal to this Court for the second time. *See* **Denny v. Regions Bank**, 479 S.W.3d 781 (Mo. App. 2016). Regions Bank (Bank) and Federal National Mortgage Association (FNMA) (hereinafter collectively referred to as Defendants) appeal from a judgment entered after a bench trial on remand. The underlying action involved a quitclaim deed (the Quitclaim Deed) from the trustees of the David G. Denny and Linda J. Denny Revocable Trust (the Trust) that conveyed certain real property (the Property) to John

and Terah Richardson (the Richardsons).[1] The judgment declared that: (1) the Quitclaim Deed reserved a life estate in the Property, held by the trustees and measured by the natural lives of David and Linda; and (2) that instrument conveyed a vested remainder to the Richardsons, which was later purchased at a non-judicial foreclosure sale by Bank and deeded to FNMA.

Defendants present two points on appeal. In Point 1, Defendants contend the trial court erred by admitting extrinsic evidence concerning the Dennys' intent as grantors in executing the Quitclaim Deed. In Point 2, Defendants contend the language in the Quitclaim Deed was legally ineffective to reserve a life estate. Finding no merit in either point, we affirm.

## Factual and Procedural Background

The Dennys were the trustees of the Trust. The Dennys owned the Property as tenants by the entirety. In 2003, they executed a deed conveying the Property to themselves in their capacities as trustees of the Trust. In 2005, the Dennys executed the Quitclaim Deed, in their capacity as trustees of the Trust, conveying the Property to the Richardsons.[2] In relevant part, the Quitclaim Deed stated:

WITNESSETH, The said Grantor, for and in consideration of the sum of $10.00 Ten and no/100 —————— DOLLARS, and other valuable consideration paid to the Grantor, the receipt of which is hereby acknowledged, do by these presents, * Remise, Release and forever Quit Claim, unto the Grantee the following [legal description of the Property].

* Grantors reserve unto themselves a life estate in the land conveyed by this Deed.

In 2007, the Bank recorded a deed of trust on the Property to secure a loan to the Richardsons. Bank's title insurance commitment and lender's title policy noted and included an exception for the life estate mentioned in the Quitclaim Deed. The Richardsons defaulted on their loan in 2012. The Bank purchased the Property at a non-judicial foreclosure sale and deeded it to FNMA.

The Dennys brought a quiet title action in their capacities as trustees to obtain declaratory relief that they had a life estate in the Property and that Defendants had no interest in the Property. By counterclaim, Defendants asked the trial court to declare, *inter alia*, that Defendants' title was superior to any interest of the Dennys. On cross-motions for summary judgment, the trial court made the following rulings:

1. The Dennys acted in their capacities as trustees of the Trust in deeding the Property to the Richardsons "with language that expressly included 'Grantors reserve unto themselves a life estate in the land conveyed by this [Quitclaim] Deed.'"

2. By such language, the Dennys intended to convey the Property "subject to the lives of David Denny and Linda Denny personally, husband and wife."

3. "FNMA does have title, but that title is subject to the Life Estate of David G. Denny and Linda J. Denny, personally."

---

1. Because the Dennys share a surname, we will refer to them individually by their given names for purposes of clarity.

2. So that the relevant portions of the Quitclaim Deed may be considered in context, a complete copy is attached to this opinion.

Defendants appealed from the judgment. A summary judgment in favor of the moving party is only appropriate "when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." *Nationwide Ins. Co. v. Dugger*, 484 S.W.3d 377, 379 (Mo. App. 2016). Defendants contended the Dennys failed to establish as a matter of law that they held personal life estates in the Property. This Court agreed:

> [T]he judgment that the Dennys hold a life estate personally lacks record support in two respects: (1) that they intended to hold such estate personally, not as trustees; and (2) even assuming such intent, that they took appropriate legal action to accomplish this (contrast their 2003 deed of the Property *into* their trust).

*Denny*, 479 S.W.3d at 783 (italics in original). We remanded the case and expressed no opinion as to "whether the Dennys could prevail on any claim for life estate at a full-blown trial on remand." *Id.*

Thereafter, the trial court held an evidentiary hearing at which the Dennys testified. During this hearing, defense counsel objected to testimony from the Dennys concerning their intent in executing the Quitclaim Deed. The ground for the objection was that the language of the Quitclaim Deed was unambiguous. The trial court received the Dennys' testimony, subject to the objection, and stated that a ruling on the objection would be included in the judgment.

The Dennys' testimony was consistent in all material respects. Linda testified that she and David had drafted the Trust and the Quitclaim Deed without the assistance of a lawyer. Linda typed in the language in

the Quitclaim Deed stating that "Grantors reserve unto themselves a life estate in the land conveyed by this Deed." Linda had copied the language from an earlier deed that conveyed real property from David's father to the Dennys and reserved a life estate for David's father. The Dennys had previously conveyed land to another relative, who "lost it financially." As a result, the Dennys wanted to retain some control of the Property when they, acting as trustees of the Trust, conveyed the Property to the Richardsons. The Property had been the family farm for "over a hundred years[,]" and the Dennys "felt like the life estate would work ... to reserve our lives that they didn't get it in full until we were both dead." As Linda testified, "once we die, of course, the life estate dies with us." David testified that Linda typed up the Quitclaim Deed with the asterisk "to kind of keep a handle on it 'cause you never know what kids are going to do." According to David, the term "themselves" in the reservation clause referred to Linda and him.

In the judgment, the trial court decided that the language of the Quitclaim Deed was ambiguous and overruled the objection to the Dennys' testimony. The court found that the Dennys' testimony was credible and that the Dennys' intent, "acting as Trustees, was indeed to convey the Subject Property to The Richardsons, subject to a life estate vested in the Trust, the duration of which would be measured by the Dennys' personal lifetimes." [3] This appeal followed.

## Standard of Review

"The judgment is presumed correct, and the appellant bears the burden of

3. A trust is not a legal entity capable of owning property. *See, e.g., Sunbelt Environmental Services, Inc. v. Rieder's Jiffy Market, Inc.,* 138 S.W.3d 130, 134 (Mo. App. 2004). Therefore, we interpret the judgment to mean that legal ownership of the life estates, as trust property, was vested in the trustees. *Id.*

proving it erroneous." **Randall v. Randall**, 497 S.W.3d 850, 854 (Mo. App. 2016). In this court-tried case, our review is governed by Rule 84.13(d) and **Murphy v. Carron**, 536 S.W.2d 30, 32 (Mo. banc 1976). **In Re Bell**, 481 S.W.3d 855, 858-59 (Mo. App. 2016). The judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. **Id.** We view the evidence in the light most favorable to the judgment and defer to the trial court regarding credibility determinations and assigning weight to witness testimony. **Id.** at 859. "The trial court is free to believe all, none, or part of the testimony of any witness." **Metzger v. Franklin**, 496 S.W.3d 547, 549 (Mo. App. 2016). We review issues of law de novo. **Gray v. Shepard**, 505 S.W.3d 317, 318 (Mo. App. 2016).

### Point 1

 In Point 1, Defendants contend the trial court erred by admitting extrinsic evidence of the Dennys' intent. This contention is based upon the following premises: (1) there was no ambiguity in the Quitclaim Deed; and (2) absent ambiguity, extrinsic evidence of the Dennys' intent was inadmissible.

 The trial court decided the Quitclaim Deed was ambiguous. We review that legal ruling de novo. See **McLallen v. Tillman**, 386 S.W.3d 837, 840 (Mo. App. 2012). Defendants' argument also implicates the parol evidence rule:

> The parol evidence rule is a rule of law, and not merely a rule of evidence. The parol evidence rule bars the use of extrinsic evidence unless the instrument to be interpreted is ambiguous. Whether a document is ambiguous is a question of

law. Two types of ambiguities in an instrument may exist: (1) a patent ambiguity and (2) a latent ambiguity.

**Emerald Pointe, L.L.C. v. Jonak**, 202 S.W.3d 652, 659 (Mo. App. 2006) (internal citations omitted). A patent ambiguity is one arising on the face of the deed. **Royal Banks of Missouri v. Fridkin**, 819 S.W.2d 359, 362 (Mo. banc 1991); see also **McLallen**, 386 S.W.3d at 840-41.

We begin by noting that "every conveyance of real estate shall pass all the estate of the grantor therein, unless the intent to pass a less estate shall expressly appear, or be necessarily implied in the terms of the grant." § 442.460.[4] The Dennys, in their capacities as trustees, held legal title to the Property. The first paragraph of the Quitclaim Deed expressly stated the Property was being conveyed to the Richardsons from the Dennys as trustees of the Trust and identified them as grantors.[5] The reservation clause stated that "Grantors reserve *unto themselves* a life estate in the land conveyed by this Deed." (Italics added.) The use of this express reservation language was sufficient to comply with § 442.460 and demonstrate the Dennys' intent as trustees to pass less than a fee simple interest to the Richardsons. **Id.** This reservation was consistent with the well-established principle that the subject matter of a trust may include a present interest of limited duration, such as a life estate. 2 Austin Wakeman Scott et al., *Scott and Ascher on Trusts*, § 10.4 (5th ed. 2006); RESTATEMENT (THIRD) OF TRUSTS § 40 cmt. b (AM. LAW INST. 2003). The measuring life for a life estate, however, "must be a human life" and "cannot be the life of a corporation, an animal, or any other non-human entity." RESTATEMENT (THIRD) OF

---

4. All statutory references are to RSMo (2000).

5. The notarial acknowledgement also stated that the Dennys were signing in their capacities as trustees.

PROPERTY: WILLS AND OTHER DONATIVE TRANSFERS § 24.5 cmt. a (AM. LAW INST. 2011).

 A deed is ambiguous when there is indistinctness or uncertainty in the meaning of the language used. *Ethridge v. TierOne Bank*, 226 S.W.3d 127, 131 (Mo. banc 2007). Although the reservation language clearly expressed an intent by the Dennys to reserve a life estate to themselves as trustees, it did not explicitly identify the human life or lives by which the duration of that estate should be measured. Both David and Linda were trustees. Was it David's life, Linda's life, or the last to die of the two? This uncertainty, patent on the face of the Quitclaim Deed, rendered it ambiguous. When interpreting a deed, a court should disregard technicalities and treat all uncertainties as ambiguities to be resolved by resort to the parties' intent as gathered from the instrument itself, the circumstances surrounding and leading up to execution of the instrument, and the subject matter and situation of the parties at that time. *Leeper v. Leeper*, 347 Mo. 442, 147 S.W.2d 660, 662 (Mo. 1941); *Thompson v. Chase Manhattan Mortg. Corp.*, 90 S.W.3d 194, 202 (Mo. App. 2002). Because of this patent ambiguity in the Quitclaim Deed, the trial court did not err by admitting the Dennys' testimony concerning their intent. Point 1 is denied.

### Point 2

 Defendants present two contentions in this point. First, Defendants contend the language in the Quitclaim Deed—stating that "Grantors reserve unto themselves a life estate in the land conveyed by this Deed"—was "ineffective and void" because it "did not reflect the material legal differences between the Dennys' trustee vs. personal capacities and a trustee cannot legally reserve a life estate without having a natural life to serve as a measuring life[.]" Second, Defendants contend the reservation was void because the "reservation of a life estate was repugnant to the [Quitclaim Deed's] grant of a fee simple interest to the Richardsons." We disagree.

 As noted above, the Dennys' intent as trustees to pass less than a fee simple interest to the Richardsons expressly appeared in the reservation clause. *See* § 442.460. To accept Defendants' argument would require us to ignore that part of the Quitclaim Deed. "A court will not be overzealous in trying to find an intention that cannot be given effect without violating positive rules of law; it will, if possible, so construe an instrument as to give it effect, not destroy it." *McAlister v. Pritchard*, 287 Mo. 494, 230 S.W. 66, 67 (Mo. 1921). "Validity is favored over invalidity." *Jones v. Cox*, 629 S.W.2d 511, 513 (Mo. App. 1981). Defendants rely primarily on two cases to support their argument that the reservation language is legally void. Both are factually distinguishable.

In *White v. Meadow Park Land Co.*, 213 S.W.2d 123 (Mo. App. 1948), a company conveyed a lot to two people and included this language in the deed: "Grantor reserves the right, at any time hereafter, to establish an alley for the use of the public across the east fourteen (14) feet of the premises above described." *Id.* at 123. The company argued that this language granted it a right to establish a *private* alley across the lot, and the company justified its argument by claiming it would allow members of the public to use the alley. *Id.* at 125. The Court found that "the reservation requires the defendant to establish a *public* alley, a segment of which will be the 14 foot strip across plaintiffs' lot; otherwise, this strip would be completely closed for *public use*, except by *permission* of the defendant or its grantees." *Id.* at 126 (emphasis in original). We fail to discern how this case aids Defen-

dants. The grantor in *White* was arguing for a construction of the deed that was inconsistent with the language actually used. In the case at bar, it is Defendants who want us to ignore the reservation language actually used in the Quitclaim Deed.

Defendants also rely on *Triplett v. Triplett*, 332 Mo. 870, 60 S.W.2d 13 (Mo. 1933), for two propositions: (1) the Dennys did not take sufficient legal action to reserve a life estate to the Trust for the duration of the Dennys' natural lives; and (2) any purported reservation of a life estate in the Quitclaim Deed is void as repugnant to the grant of a fee in the granting clause. In *Triplett*, the grantee of real property (Father) sued his son (Son) to quiet title to the property. *Id.* at 14-15. The deed in question transferred property to Father from a third party and stated that the third party "by these presents grant, bargain and sell, convey and confirm, unto the said parties of the second part, his heirs and assigns, the following described lots[.]" *Id.* at 14. Father argued that he took fee-simple title via the deed. *Id.* at 15. Son argued that "by the deed [Father] took a life estate in the land conveyed, with remainder to the heirs of his body"—i.e., a fee tail. *Id.*[6] Our Supreme Court noted that specific words of procreation were mandatory to create a fee-tail estate, and the Court could not add those words for the grantor. *Id.* (citing 2 BLACKSTONE, COM. *115). The Court held that the deed "did not convey a fee-tail estate as contended by the appellants because the words of procreation were not used." *Triplett*, 60 S.W.2d at 15. The Court also addressed a purported restraint on alienation in the deed, which stated,

"the power to sell the above tract being prohibited until [Father's] heirs are twenty-one years of age." *Id.* at 16. After reviewing cases holding that attempted restraints on alienation after the grant of fee-simple title were void and repugnant to the absolute ownership incident to the fee, the Court held that the restraint on alienation was void because it was "an ineffectual limitation of a fee already granted." *Id.*

*Triplett* is distinguishable for several reasons: (1) unlike the fee tail at issue in *Triplett*, there is no mandatory phrase that a grantor must use to reserve or convey a life estate, *Burnet v. Burnet*, 244 Mo. 491, 148 S.W. 872, 874 (Mo. 1912); (2) the clause struck down in *Triplett* was a restraint on alienation, which unlike life estates have traditionally been disfavored in the law; and (3) there is nothing "repugnant" when a grantor conveys a fee-simple remainder and reserves a life estate. The fact that the Quitclaim Deed reserved a life estate to the grantor out of a conveyance in fee is no more contradictory or repugnant, and perhaps less so, than a deed effecting a present conveyance of a future interest by reference only to the future interest. Indeed, case law and secondary authority confirm that reserving a life estate out of a conveyance in fee has long been a commonly utilized and accepted approach. *See, e.g.*, *Barker v. Barker*, 219 S.W.2d 391, 392 (Mo. 1949); *Dawson v. Taylor*, 214 S.W. 852, 852-53 (Mo. 1919); 26A C.J.S. *Deeds* § 375 (2011) (a "deed reserves a life estate ... which conveys the fee and reserves the right to occupy the premises and receive the profits therefrom during the grantor's life"); *cf.*

**6.** Son apparently disputed the interest conveyed because the conveyance of a fee tail to Father would have been automatically converted to a life estate to Father with the remainder in fee simple passing to Son. *See*

*Triplett*, 60 S.W.2d at 15 (noting that fee tails had been abolished by statute and citing in part to the 1899 version of what is now § 442.470).

*Thompson,* 90 S.W.3d at 201 ("execution and delivery of a quitclaim deed ... simply indicates that the grantor is conveying whatever interest he or she has, subject to any clearly expressed qualification, reservation, or exception").

Finally, Defendants argue that the reservation of a life estate was void because it conflicted with language in the habendum clause [7] phrased in fee simple absolute. This Court looks for the intent of the grantor in a deed. *Senseney v. Jeffrey,* 799 S.W.2d 636, 638 (Mo. App. 1990). That intent "may be expressed anywhere in the instrument, and in any words, the simpler and plainer the better, that will impart it; and the court will enforce it no matter in what part of the instrument it is found." *Leeper,* 147 S.W.2d at 662 (internal quotation marks omitted). Even where various clauses in a deed conflict, "if the intention of the parties may be gathered from the whole instrument, rather than from particular, segregated clauses, that intention will prevail and be given effect if possible and if it is not contrary to some positive rule of law." *Petty v. Griffith,* 165 S.W.2d 412, 415 (Mo. 1942).

The strongest expression of the Dennys' intent in the Quitclaim Deed is the language reserving a life estate. The reservation: (1) is incorporated into the granting clause with an asterisk; (2) is conspicuously located thereafter; (3) uses simple and plain language; and (4) employs terms commonly understood to evidence the intent to reserve a life estate. Even accepting any inconsistency in the terms of the Quitclaim Deed, we would give effect to the reservation over the habendum. *See Bullock v. Porter,* 365 Mo. 572, 284 S.W.2d 598, 602 (Mo. 1955) ("In the event of an inconsistency, the provisions in the premises of a deed generally prevail over the habendum. The term 'premises' is generally held to refer to all that part of the deed which precedes the habendum clause[.]") (internal citation omitted).[8]

Adopting Defendants' argument—that the Richardsons received (and consequently, that FNMA as successor-in-title now holds) fee-simple title to the Property—would have required the trial court to decide that the clearest manifestation of the grantors' intent in the Quitclaim Deed was not simply ambiguous, but entirely void. Defendants have not met their burden of showing that the trial court erroneously applied the law by reaching the opposite legal conclusion. *See Randall,* 497 S.W.3d at 854. Point 2 is denied.

The trial court's judgment is affirmed.

NANCY STEFFEN RAHMEYER, C.J./P.J.—CONCUR

WILLIAM W. FRANCIS, JR., J.—CONCUR

### Appendix

7. As is the case here, the introductory words to this clause "are ordinarily *to have and to hold.*" BLACK'S LAW DICTIONARY (9th ed. 2009) (italics in original).

8. Cases from other jurisdictions are in accord. *See generally* W.W. Allen, Annotation, *Conflict between Granting and Habendum Clauses as to Estate Conveyed,* 58 A.L.R.2d 1374 § 2 n.8 (1958, as updated by cumulative supplement) (noting that in cases where the granting clause specially designates an estate less than in fee simple absolute as that conveyed, "such clauses have quite uniformly been held to prevail over conflicting habendums phrased in formal language in fee").

**Appendix**

 

016319-05 01 APR 2005 01:50:52pm

Book:2005
Page:016319-05
2 pages

recoid

REAL ESTATE DOCUMENT
GREENE COUNTY, MISSOURI
RECORDERS CERTIFICATION

RECORDER OF DEEDS

---

### QUIT CLAIM DEED

THIS INDENTURE, made on the 22nd day of March, 2005, by and between, DAVID G. DENNY and LINDA J. DENNY, as Trustees of the David G. Denny and Linda J. Denny Revocable Trust, dated June 17, 2003, Known as "Grantor" of the County of Greene, State of Missouri, and JOHN R. RICHARDSON and TERAH L. RICHARDSON, husband and wife, Known as "Grantee" of the County of Greene, in the state of Missouri.

(mailing address of said first named grantee is 532 N. College Ave., Republic, Missouri 65738)

WITNESSETH, The said Grantor, for and in consideration of the sum of $10.00 Ten and no/100------------------------------------------------------DOLLARS, and other valuable consideration paid to the Grantor, the receipt of which is hereby acknowledged, do by these presents, * Remise, Release and forever Quit Claim, unto the Grantee the following described Lots, Tracts or Parcels of Land, lying, being and situate in the County of Greene and State of Missouri, to-wit:

> All of the Southwest Quarter (SW ¼), of the Northeast Quarter (NE ¼), of the Northeast Quarter (NE ¼), Containing 10 acres. Also an ingress and egress easement over and across the West twenty (20) feet of the Northwest Quarter (NW ¼) of the Northeast Quarter (NE ¼) of the Northeast Quarter (NE ¼); All being in Section 23, Township 28 North, Range 24 West, Greene County, Missouri.

*Grantors reserve unto themselves a life estate in the land conveyed by this Deed.

TO HAVE AND TO HOLD the same with all rights, immunities, privileges, and appurtenances thereto belonging or in anywise appertaining unto the said Grantee and unto successors and assigns forever so that neither the said Grantor nor successors nor any other person or persons for the said Grantors or in their name or behalf shall or will hereafter claim or demand any right or title to the aforesaid premises or any part thereof; but they and every one of them shall be, by these presents, excluded and forever barred.

EXHIBIT A

IN WITNESS WHEREOF, The said Grantor has hereunto set their hand the day and year first above written.

GRANTORS:

David G. Denny

Linda J. Denny

STATE OF MISSOURI )
 )ss.
COUNTY OF GREENE )

On this _22nd_ day of March, 2005, before me personally appeared DAVID G. DENNY and LINDA J. DENNY, as Trustees of the David G. Denny and Linda J. Denny Trust, dated June 17, 2003 to me known to be the person(s) described in and who executed the foregoing instrument, and acknowledged to me that they executed the same as their free act and deed and for the purposes therein stated.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed by official seal, the day and year last above written.

Notary Public Verle A. Ormsby

(SEAL) VERLE A. ORMSBY NOTARY PUBLIC
NOTARY SEAL GREENE COUNTY
STATE OF MISSOURI
MY COMMISSION EXPIRES 01-04-06

My commission expires: __01/04/2006__

AFTER RECORDING RETURN TO: David G. Denny
 11014 W. Farm Road 178
 Republic, MO 65738