

# Missouri Court of Appeals

### Southern District

### Division Two

TODD BUSQUE,               )
                                    )

   Plaintiff-Respondent,     )
                                    )

v.                          )      No. SD35732
                                    )      Filed: November 4, 2019

HALSTON HECK,          )
                                    )

   Defendant-Appellant.      )

### APPEAL FROM THE CIRCUIT COURT OF PHELPS COUNTY

Honorable Ronald D. White, Associate Circuit Judge

## <u>AFFIRMED</u>

A mechanic, Todd Busque (Mechanic), obtained a judgment in small claims court against a truck owner, Halston Heck (Owner), in the amount of $4,044.45 for repairs Mechanic made to Owner's truck. Owner requested a trial *de novo* and also filed a counterclaim based on, *inter alia*, the Magnuson Moss Warranty Act (MMWA). The trial court found in favor of Mechanic on his claim for breach of contract, against Owner on his counterclaim, and entered judgment in Mechanic's favor for the cost of repairs.

Owner presents two points for decision. He contends the trial court erred in entering judgment against Owner: (1) on his "MMWA counterclaim because an implied warranty attached by operation of law"; and (2) on the "breach of contract claim because

the statute of frauds rendered the oral agreement unenforceable, in that it was not made in writing and was for the sale of goods" for more than $500. Finding no merit in either contention, we affirm.

The judgment is presumed correct, and the party challenging the judgment bears the burden of proving it erroneous. ***Denny v. Regions Bank***, 527 S.W.3d 920, 924-25 (Mo. App. 2017). In this court-tried case, our review is governed by Rule 84.13(d) and ***Murphy v. Carron***, 536 S.W.2d 30 (Mo. banc 1976), which requires this Court to affirm the trial court's judgment unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. ***Murphy***, 536 S.W.2d at 32. "We review issues of law *de novo*." ***Denny***, 527 S.W.3d at 925. We defer to the trial court's credibility determinations. ***Metzger v. Franklin***, 496 S.W.3d 547, 549 (Mo. App. 2016). "The trial court is free to believe all, none, or part of the testimony of any witness." ***Id***.; *see **Archdekin v. Archdekin***, 562 S.W.3d 298, 310 (Mo. banc 2018). All evidence and reasonable inferences therefrom are viewed in the light most favorable to the trial court's judgment, and all evidence and inferences to the contrary are disregarded. ***Landewee v. Landewee***, 515 S.W.3d 691, 694 (Mo. banc 2017). So viewed, the following facts were adduced at trial.

On May 28, 2015, Owner contacted Mechanic about repairing Owner's 2002 Ford F-350 truck (Truck), with over 300,000 miles on it. After Owner delivered his Truck to Mechanic's shop, Mechanic determined the Truck had a transmission problem. The parties entered into an oral agreement for Mechanic to: (1) repair the Truck's transmission; and (2) upgrade the transmission by installing a performance shift kit. Mechanic then removed

the transmission and sent it to be rebuilt by another mechanic who specialized in transmission rebuilds. Mechanic also obtained a shift kit from the same mechanic.

When Mechanic installed the rebuilt transmission and shift kit, he discovered that the starter, batteries and air filter also were in need of repair. Owner authorized the repair of these items, and Mechanic did so. Prior to completing these repairs, no mention was made of any necessary repairs to the Truck's rear end. After all of the authorized repairs were made, Mechanic contacted Owner and told him to pick up the Truck.

Owner came to Mechanic's shop to retrieve the Truck and was informed that the total bill was $4,044.45. Owner attempted to pay with a credit card, but Mechanic did not have the capability to process credit cards. Owner informed Mechanic that he would have to go to the bank and return with money to pay the bill. Owner then test drove the Truck with Mechanic. After the test drive, Owner said he would meet Mechanic with a check for the repairs and left the shop with the Truck. Owner drove the Truck to town. Owner never returned or paid Mechanic.

At some point after Owner took the Truck, the "rear end seized up" and the rear wheels stopping rolling. Mechanic testified that: (1) the rear-end problems were unrelated to the transmission repair; and (2) a vehicle's rear end could fail any time, especially after lots of wear on a truck with over 300,000 miles on it.[1] Mechanic also testified that he provides a warranty for his own work and "would do whatever it takes" to fix any issue

---

[1] After later taking photos of the Truck, Mechanic explained that the rear end failed because the "spider gear [which] drives both rear axles to the tires … overheated" and came apart from "lack of lubrication." Mechanic testified that it had been "[s]everal years" since the rear-end cover over the port to fill the oil had been taken off.

related to his repairs. Because he repaired the transmission, his warranty extended only to the transmission repairs and not to the issues with the rear end.

After hearing all the evidence, the trial court found in favor of Mechanic. The court found the rear-end issues were unrelated to the transmission repairs performed by Mechanic. Therefore, the court decided that Mechanic was entitled to recover his fee for repairing the transmission. The court also found that "[w]ith regard to the contested factual issues, the Court finds the testimony of [Mechanic] credible and, to the extent [Owner] disagreed with [Mechanic], the Court finds [Owner's] testimony to not be credible." The court explained its credibility determinations in the judgment:

> [Owner] did not request [Mechanic] perform any work on the rear end of the truck and [Mechanic] did no work to the rear end. None of the work performed by [Mechanic] involved the rear end of [the Truck] nor did it have any effect on the rear end of [the Truck]. There was no credible evidence that any action by [Mechanic] caused damage to the rear end of [the Truck]. [Owner] has failed and refused to pay [Mechanic] for work completed on [the Truck].

> There was a valid contract between the parties for the work performed by [Mechanic] on [the Truck]. [Mechanic] performed all of his obligations under the verbal contract and performed no work not authorized by [Owner]. [Mechanic] fully performed his obligations under the oral contract….

> The cost of repairs were comparable to the quote that [Owner] received from the Ford dealer. [Owner] received multiple quotes from dealers to fix the transmission and at least one dealer looked the truck over and said that the transmission was the issue. The prices charged by [Mechanic] were reasonable. …

> The work performed by [Mechanic] was performed in accordance with the authorization he received from [Owner] and was performed in a workmanlike manner…. There was no credible evidence presented that any of the work performed by [Mechanic] was deficient or led to any loss by [Owner].

Because Owner contended that the parties' oral contract was for the sale of goods, rather than the repair of the Truck, the court addressed that issue as well:

> The Court finds that the primary purpose of the parties' contract was for the repair of [the Truck], not the sale of goods. The goods involved (principally the rebuilt transmission) were necessary for, but ancillary to, the primary purpose of the contract.

Therefore, the court: (1) denied Owner's counterclaim based on an implied warranty; (2) determined the oral contract to repair the transmission was enforceable; and (3) ordered Owner to pay Mechanic $4,044.45 for the Truck repairs. This appeal followed.

*Point 1*

Owner's first point contends the trial court erred in entering judgment in Mechanic's favor on Owner's "MMWA counterclaim because an implied warranty attached by operation of law[.]"[2] According to Owner, an implied warranty of merchantability applied to the transmission repair and also extended to the rear-end issues, which required Mechanic to repair the rear-end issues "within a reasonable time and without charge." We disagree.

As an initial matter, there is no dispute that a warranty attached to the transmission repair. Mechanic testified as to his own express warranty covering his repairs.[3] Owner's argument fails because the cause of the rear-end failure was a factual issue, and the trial

---

[2] In Owner's counterclaim, he alleged that under the MMWA, Mechanic created an "'[i]mplied warranty,' as defined by 15 U.S.C. § 2301(7)[.]" The purpose of the MMWA is to regulate "warranties on consumer goods and to provide injured consumers with a cause of action against manufacturers who fail to comply with its requirements." *Edwards v. Hyundai Motor Am.*, 163 S.W.3d 494, 499 (Mo. App. 2005).

[3] Given that an express warranty attached to the rebuilt transmission in this case, we need not address Owner's argument that an implied warranty of merchantability attached to the rebuilt transmission under the MMWA.

5

court believed Mechanic's testimony that the rear-end failure was not caused by the transmission repairs.

In support of Owner's argument, he relies on his own testimony that the rear wheels were locked up from the beginning, when he first presented his Truck to Mechanic. According to Owner's testimony, the Truck's "rear wheels would not spin and the vehicle would not move." The trial court did not believe this testimony, and we defer to the court's credibility determination. *Metzger*, 496 S.W.3d at 549. The court determined the rear-end problems happened *after* the transmission was repaired and were unrelated to the transmission repair. Support for this determination is found in Owner's own testimony admitting that, after the transmission repairs, he drove the Truck during the test drive and later to town. Had the rear wheels been locked up from the beginning as Owner claimed, he could not have driven the vehicle at all. Because Owner failed to establish any warranty extended to the later, unrelated rear-end issues, the trial court did not err in finding in favor of Mechanic and against Owner on his warranty claim. Point 1 is denied.

*Point 2*

Owner's second point contends the trial court erred in entering judgment in Mechanic's favor "on his breach of contract claim because the statute of frauds rendered the oral agreement unenforceable, in that it was not made in writing and was for the sale of goods for the price of more than [$500]" as required by § 400.2-201.[4] According to Owner, a written contract was required because the agreement to repair the Truck was a sale of "goods" under the Missouri Uniform Commercial Code (UCC). Again, we disagree.

---

[4] All statutory references are to RSMo (2016) unless otherwise indicated.

Provisions of the UCC apply only to transactions in goods. *Missouri Farmers Ass'n v. McBee*, 787 S.W.2d 756, 760 (Mo. App. 1990); § 400.2-102. Therefore, the UCC does not apply to service transactions. *Missouri Farmers Ass'n*, 787 S.W.2d at 760-61 (under UCC, "implied warranties do not apply to service contracts"). "In a contract which calls for both goods to be furnished and services to be performed, the test for whether the UCC applies is whether the predominant purpose of the contract is to render services with goods incidentally involved, or to transact a sale, with labor incidentally involved." *Cent. Dist. Alarm, Inc. v. Hal-Tuc, Inc.*, 886 S.W.2d 210, 212 (Mo. App. 1994); *U.S. Neurosurgical, Inc. v. St. Luke's Cancer Inst., L.L.C.*, 328 S.W.3d 234, 237 (Mo. App. 2010). "Interpretation of a contract is an issue of law that we review *de novo*." *Patterson v. Rough Rd. Rescue, Inc.*, 529 S.W.3d 887, 893 (Mo. App. 2017).

Here, Owner cites no case in Missouri that has held an oral contract for transmission repair, or any repair or service, of an automobile or truck is a sale of goods. Owner invites this Court to engage in a more extensive analysis based on factors adopted by other jurisdictions, but we decline to do so. We instead agree with the trial court that the predominant purpose of the oral contract in this case was for the repair of the Truck – a service – and not just the sale of a rebuilt transmission as a sale of goods. Owner sought Mechanic's expertise as a mechanic to ascertain the problem and repair his Truck. As such, Mechanic was performing a service. Had Owner wanted to obtain only a rebuilt transmission, he could have done so directly from a supplier, purchasing it as a sale of

goods. *See, e.g.*, **Brazeal v. Craig**, 683 S.W.2d 329, 330 (Mo. App. 1984) (applying UCC provisions to a rebuilt transmission as a component part only).[5]

Thus, because the oral agreement to repair the Truck in this case was for a service, the UCC does not apply to require that the contract be in writing to be enforceable. *See* **Missouri Farmers Ass'n**, 787 S.W.2d at 760. Accordingly, the trial court did not err in enforcing the oral contract and entering judgment for Mechanic. Point 2 is denied.

The judgment of the trial court is affirmed.


JEFFREY W. BATES, J. – OPINION AUTHOR

WILLIAM W. FRANCIS, JR., P.J. – CONCUR

MARY W. SHEFFIELD, J. – CONCUR

---

[5] We find further support for our decision in other cases in Missouri upholding and enforcing oral contracts for automobile and truck repair/service in different contexts. For example, "[w]hen a vehicle is taken to a garage to be repaired, without any agreement as to compensation, the law implies a promise to pay what the repairs are reasonably worth, considering the time, skill and equipment required." **Poole v. McKeen**, 654 S.W.2d 362, 364 (Mo. App. 1983) (quotation marks and citation omitted). Accordingly, "a mechanic who performs authorized repairs on a motor vehicle retains a common law possessory lien on that vehicle to secure his charges." **Int'l Harvester Co. v. Mahacek**, 705 S.W.2d 603, 605 (Mo. App. 1986); *see* **Poole**, 654 S.W.2d at 364. Further, by taking the car from a mechanic's possession without paying the charges, an owner "could be guilty of stealing both the car and the parts placed therein by [the mechanic]." **State v. Ecford**, 239 S.W.3d 125, 129 (Mo. App. 2007). Noteably, **Ecford** involved only "verbally authorized" repairs of a vehicle, not a written agreement. *Id*. at 126.