

# Missouri Court of Appeals

## Southern District

### Division Two

| | | |
|---|---|---|
| CITY OF MALDEN, MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | No. SD36182 |
| | ) | Filed: October 27, 2020 |
| DUNKLIN COUNTY REORGANIZED | ) | |
| COMMON SEWER DISTRICT #1, | ) | |
| | ) | |
| Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF DUNKLIN COUNTY

Honorable Bradley D. Jarrell, Special Judge

## AFFIRMED

This appeal involves the interpretation of a payment provision in an "Intergovernmental Service Agreement" (Agreement) between the City of Malden, Missouri (City) and the Dunklin County Reorganized Common Sewer District #1 (District) concerning the City's treatment of the District's wastewater. Following a billing dispute, the parties tried the matter to the trial court. The trial court entered judgment in favor of the City, deciding that the City had billed the District correctly under the terms of the Agreement.

The District presents two points on appeal. It contends the judgment in favor of the City "is not supported by substantial evidence and erroneously applies the law" because the Agreement was unambiguous and the trial court considered parol evidence of: (1) an ordinance to interpret the Agreement; and (2) a mediated settlement to interpret the Agreement. Finding no merit to either point, we affirm.

**Standard of Review**

The judgment is presumed correct, and the party challenging the judgment bears the burden of proving it erroneous. *Denny v. Regions Bank*, 527 S.W.3d 920, 924-25 (Mo. App. 2017). In this court-tried case, our review is governed by Rule 84.13(d) and *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).[1] We are required to affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy*, 536 S.W.2d at 32. With respect to factual determinations, we defer to the trial court's assessment of the credibility and weight of witness testimony. *Metzger v. Franklin*, 496 S.W.3d 547, 549 (Mo. App. 2016). The trial court is free to believe all, none or part of the testimony of any witness. *Id*. "We review issues of law *de novo*." *Denny*, 527 S.W.3d at 925.

**Factual and Procedural Background**

In November 1998, the District and the City entered into the Agreement for the City's treatment of wastewater collected by the District for a term of 35 years. The District agreed to pay the City a minimum user fee of $1,000 per month for up to 250 customers

---

[1] All rule references are to Missouri Court Rules (2020). All statutory references are to RSMo (2016).

and an additional charge of $4 per month per customer above 250. The Agreement provided that the amount charged to the District could be raised or lowered by the same percentage that the sewer rates were raised or lowered for residents of the City.

In July 2010, the City passed "Ordinance No: 3018" (the Ordinance), which sets forth the formula established by the city council to calculate the wastewater rate for all customers, including the District. The Ordinance replaced a previous version passed in 2000. The Ordinance calculated the wastewater rate by setting a monthly customer charge and adding monthly charges for wastewater service, based on monthly water usage.[2] For those customers located inside the City limits, the Ordinance also required that the rates be adjusted each year based on cost of operations of the previous year.

In 2014, a dispute arose between the parties concerning the amount of user fees the District owed to the City under the Agreement. In January 2015, the parties met with a mediator to resolve their differences. As a result, the parties entered into a one-page, handwritten settlement (hereinafter referred to as the Mediated Settlement). The Mediated Settlement did not modify the Agreement. Instead, the Mediated Settlement set forth

---

[2] In relevant part, the Ordinance specified:

Residential Waste Water Rates
  Monthly Customer Charge
      Resident      $ 5.00
      Non Resident  $10.00

  Monthly Charges for Waste Water Service (based on monthly water usage)
      First 6,500 Gallons    $2.90 per 1,000 Gallons
      Next 5,000 Gallons    $2.36 per 1,000 Gallons
      Next 2,500 Gallons    $1.78 per 1,000 Gallons

amounts that: (1) the District agreed to pay in user fees; and (2) the City agreed to charge per customer.[3] The City and the District agreed that "[a]ll claims for underbilling or overbilling are abandoned."

In August 2016, the City filed its underlying petition to collect an unpaid balance allegedly due from the District under the Agreement. In response, the District filed a counter-petition alleging that the City overbilled the District and improperly raised its rates. Trial in the matter was held in February 2019.

The parties' dispute under the Agreement is limited to three provisions of the sixth paragraph. Provision 1 directs the District to pay the City a minimum fee of $1,000 per month for up to 250 customers, and an additional charge of $4 per month per customer above 250:

> [The District] will pay to or on behalf of [the City] a user fee to cover the cost of treatment of [the District's] wastewater. Said user fee shall be calculated as follows:
>
> A. A minimum monthly charge of $1,000.00; said minimum monthly charge shall cover treatment costs for wastewater from up to 250 residential customers of [the District], plus
>
> B. An additional charge of $4.00 per residential customer per month for each residential customer of [the District] exceeding 250.

Provision 2 provided for review and modification of the user fee every two years at the request of either party:

> The user fee provided herein shall be established at the time [the District] begins operation and, at the request of either party, shall be subject to review

---

[3] In relevant part, the parties agreed that: (1) "District shall pay City $9,804.50 by 1/31/15 to completely satisfy all current and past due usage fees. (Less $1804.96 pd ck 3145)"; and (2) "Beginning Feb. 1, 2015, City shall charge District $10.41 per customer. This rate shall not be adjusted until July 1, 2015."

4

and modification every 2 years, commencing 2 years following the month [the District] begins operation. The failure to call for review of the user fee at the time specified shall not be a waiver of any subsequent reviews of the user fee.

Provision 3 specified that the amount charged to the District could be raised or lowered in the same percentage that the sewer rates were raised or lowered for residents of the City:

User fees charged to [the District] shall be raised or lowered in the same percentage as [the City] raises or lowers rates for [its] customers located within [the City] limits.

The parties have different interpretations of Provision 1, which specifies a "minimum monthly charge of $1,000" for "up to 250 residential customers[.]" The District argued that this means there is both a "flat fee" of $1,000 for the first 250 customers and a "per user fee" of $4 for customers 251 and up. According to the District, the user fee is not a single per-customer charge, like the City had been charging for all District customers. The District also argued that the City had wrongfully raised rates without following Provision 2. According to the District, this provision requires either party to first request review and modification of the user fee every two years before modifying it.

The City, on the other hand, argued that the monthly charge of $1,000 under Provision 1 established only a minimum starting point and that the amount reflected a $4 per-customer charge (dividing $1,000 by 250 to equal $4). According to the City, the Agreement contemplated a single per-customer charge, as evidenced by raising and lowering the charge through the years. The City referred to Provision 3, which states that the charge per customer of the District "shall be raised or lowered in the same percentage" as the City raises or lowers rates for its customers located within the City limits.

5

In support of the City's position, the City offered testimony from one of the drafters of the Agreement, Clark Duckett (Duckett). On direct examination, when asked "what were your intentions" as to the rates paid by the District in relation to the rates paid by customers of the City, the District objected, stating the "document speaks for itself." The following colloquy occurred:

> [DISTRICT'S ATTORNEY]: Judge, I'm going to object to the question. The document speaks for itself. There's no reason to get into the intention of the document.
>
> [CITY'S ATTORNEY]: Your Honor, I believe the intention of the document is very important in this case. I need to – he has testified he's the author of this particular provision and I think the intentions – I mean, I realize that it's up to the Court to interpret the contract, but I think the intention of the author of that particular paragraph and what they meant by that particular paragraph is – is important.
>
> [DISTRICT'S ATTORNEY]: And I think you only get to that, Your Honor, if I may, if you find the contract to be ambiguous, and it's the Sewer District's position that it is not ambiguous.
>
> THE COURT: Well, my understanding is that you all have a difference of opinion as to what that means; is that correct?
>
> [CITY'S ATTORNEY]: Yes.
>
> THE COURT: And so, there has to be some ambiguity to – to get – get to that disagreement. And so, I'm going to overrule that and we'll hear what he thinks it means and we'll also hear what you all think it means.
>
> [DISTRICT'S ATTORNEY]: Just – just for clarity – and I appreciate the Court's ruling – can I have a standing objection on that so I don't have to object –
>
> THE COURT: Absolutely.

Duckett then went on to testify that: (1) the $1,000 covered the first 250 residents at $4 each because it was the same rate that a City resident paid at the time; (2) the provision

was to ensure the City received a minimum of $1,000 per month because the City was unsure if the District even had 250 residents that would hook up at the time; and (3) the provision that would raise/lower the District rates by the same percentage as the City rates was automatic to ensure that the District customers always paid as much as the City customers. In addition, Duckett presented testimony about the Ordinance and the Mediated Settlement, much of which was recounted previously.

The City's office manager similarly testified about the Ordinance and the Mediated Agreement. Both documents were admitted in evidence. The office manager confirmed that wastewater rates were calculated pursuant to the Ordinance and charged to all customers, including the District. She also testified that the District paid user fees pursuant to the Mediated Agreement and continued to do so for months later. The District paid without complaint, although not always on time.

Thereafter, the trial court found in favor of the City. The court agreed with the City that the Agreement contemplated a single per-customer charge, and that the District's interpretation was flawed for the following reasons:

> First, to assume that the parties intended to keep a rate of $4.00 per person for the first 250 people indefinitely is unrealistic. Believing that the rate was static ignores the latter paragraph in the contract which states that the rate shall raise and lower with that of the residents of [the City]. The District's further contention that because [the City] never called for review and modification, therefore could not change this amount, also ignores this provision which allows for automatic changes. The best evidence for this interpretation is that the rate has fluctuated many times throughout the years of partnership between these two entities, raising and lowering in step with the rate charged to the residents of [the City], and this practice has not been disputed by the District until recently when they simply began sending in less payment.

7

The court interpreted "the review and modification every 2 years at request" under Provision 2 as "in addition to" the "automatic raising and lowering provision" in Provision 3. The court also decided that, "although some of the language of the contract is confusing and ambiguous it is not feasible to interpret these provisions otherwise." The court therefore ordered the District to pay the balance owed the City as of May 31, 2019. This appeal followed.

**Discussion and Decision**

In both points on appeal, the District contends that the judgment in favor of the City regarding the user fees due pursuant to the Agreement "is not supported by substantial evidence and erroneously applies the law" because the trial court considered parol evidence to interpret the Agreement. According to the District, the trial court was required to decide this dispute by looking only at the language of the Agreement and without considering the Ordinance and Mediated Settlement. For the following reasons, we disagree.

First, "[t]he parol evidence rule bars evidence of prior or contemporaneous oral agreements that vary or contradict the terms of an unambiguous, final, and complete writing, absent fraud, mistake, accident or duress." ***Building Erection Servs. Co. v. Plastic Sales & Mfg. Co., Inc.***, 163 S.W.3d 472, 479 (Mo. App. 2005); *see also* ***Sherman v. Deihl***, 193 S.W.3d 863, 866 (Mo. App. 2006) ("parol evidence rule constitutes substantive law, and not merely an evidentiary rule"). For this rule to apply, however, the Agreement had to be unambiguous. The trial court decided, and we agree, that the Agreement contained

ambiguities that had to be resolved.[4]  Therefore, the trial court's admission of Duckett's testimony, concerning the intentions of the parties when the Agreement was reached, did not violate the parol evidence rule.  *See **Denny***, 527 S.W.3d at 926 (because the deed was ambiguous, the trial court did not err by admitting extrinsic evidence of the grantors' intent).

Second, there is no merit in the District's contention that the trial court should not have considered parol evidence concerning the Ordinance and the Mediated Agreement to interpret the Agreement.  The parol evidence rule "does not prohibit evidence of agreements entered into *after* the contract was executed." ***Warrenton Campus Shopping Ctr., Inc. v. Adolphus***, 787 S.W.2d 852, 855 (Mo. App. 1990) (italics in original); *see also **Pac. Carlton Dev. Corp. v. Barber***, 95 S.W.3d 159, 165 (Mo. App. 2003).  Both the Ordinance and Mediated Settlement occurred years *after* the Agreement.[5]  In particular, the Mediated Settlement resolved all disputes up to that point involving the City's billing of the District.

Third, we agree with the trial court that the parties themselves established the correct interpretation of the Agreement.  *See **Stone v. Farm Bureau Town & Country Ins.***

---

[4]  "If reasonable people can differ as to the meaning and interpretation of the contract, because the terms are susceptible to more than one meaning, then it is ambiguous." ***Sherman***, 193 S.W.3d at 866.  "Whether a contract is ambiguous is a question of law that this Court decides *de novo*." ***Id***.; *see **Denny***, 527 S.W.3d at 925.

[5]  The District's reliance on § 432.070, requiring a contract made with a municipality be in writing, and its terms be fixed when the contract is entered, is misplaced. The Agreement was in writing.  This statute does not prohibit a trial court from receiving evidence that clarifies the parties' intent when the contract is ambiguous. ***Withers v. City of Lake St. Louis***, 318 S.W.3d 256, 264 (Mo. App. 2010).

*Co. of Missouri*, 203 S.W.3d 736, 745-46 (Mo. App. 2006). We "take note of the well-established principle that the interpretation placed on a contract by the parties before it becomes a matter of controversy is entitled to great weight in ascertaining their intent and understanding, and the courts will generally follow the parties' own practical interpretation of the agreement." *Id*. at 745. Here, the "course of conduct" between the parties established the billing method for at least 16 years, from the Agreement's inception in 1998 to the dispute that arose in 2014. The City interpreted the Agreement as providing a single per-customer usage fee and automatically adjusted the District rate by the same percentage as that of City residents. The City billed the same, and the District paid accordingly. It was only when the District decided not to follow that settled course of conduct and challenge the billing method under the Agreement that the present controversy arose. The trial court's decision merely required the District to pay what it had been paying without dispute for many years. We agree with that result. "By so holding, we merely follow the practical construction of [the Agreement] placed upon it by the parties themselves prior to any controversy arising." *Id*. at 746.

Finding no merit in either Point 1 or Point 2, they are denied. The judgment of the trial court is affirmed.

JEFFREY W. BATES, C.J./P.J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCUR

MARY W. SHEFFIELD, J. – CONCUR

10